RUTH T. CARROLL *vs.* ACTING DIRECTOR OF PUBLIC WELFARE OF CAMBRIDGE & another.

Middlesex.    December 6, 1968. — January 8, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Public Welfare.*

Properly construed, the public welfare "policy manual" in 1967 required that in determining the eligibility of a widow to assistance under G. L. c. 118, relating to aid to families with dependent children, all the earnings of a son of the widow under eighteen years of age living with her, less certain deductions provided for by the manual, be considered a resource, not merely a small portion of such earnings which the son actually contributed to his mother [185–187]; so construed the manual was not arbitrary, unreasonable or discriminatory [186], nor contrary to c. 118 or 42 U. S. C. (1964) §§ 601 et seq. [187–188].

PETITION filed in the Superior Court on September 20, 1967.

---

[3] The board of appeals may grant an exception for certain uses "not injurious, noxious, or offensive to the neighborhood."

The case was heard by *DeSaulnier*, J.

*A. Van C. Lanckton* for the petitioner.

*Christopher J. Armstrong*, Assistant Attorney General, for the respondents.

CUTTER, J. Mrs. Carroll, on September 20, 1967, sought review in the Superior Court (G. L. c. 30A, § 14, as amended) of a final decision (August 22, 1967) of the State Department of Public Welfare (the department). On appeal to it (G. L. c. 118, § 8[1]), the department had sustained a decision (June 28, 1967) of the Cambridge board of public welfare (the city board). Mrs. Carroll had been receiving public assistance (aid to families with dependent children or AFDC) from the city of $48.20 on the first and sixteenth of each month. She received no aid on July 1, 1967, because her son Dennis was working and contributing an amount which caused the income attributable to her to exceed the budget of required income determined for her. A final decree in the Superior Court affirmed the department's decision. Mrs. Carroll appealed to this court.

1. The department referee's condensed findings are somewhat obscure because of blind references to a "policy manual" which was not introduced in evidence before the referee.[2] In substance the referee's decision sustained the city board and adopted essentially its reasons. In a case to be reviewed in the courts, the board should have made subsidiary findings, clearly sufficient to warrant its conclusions and to show that it applied correct principles of law. We are able, however, to piece together the basic facts from the

---

[1] Section 8, as amended through St. 1939, c. 248, provided an appeal to the department from the failure of a municipality to render adequate aid under c. 118. The section has been repealed by St. 1967, c. 658, § 34, effective July 1, 1968, in connection with the statutory provision by c. 658 for the direct administration by the department of the Commonwealth's public welfare system.

[2] In future cases coming from the department to this court or to the Superior Court, copies of any such manuals and of any regulations relied upon by any party or by the department or its referee should be expressly placed in evidence, and one or more copies (as in force on the relevant dates) should be provided as part of the record for the use of each court. On this occasion to avoid additional expense to Mrs. Carroll and her counsel, we accept certain manual provisions as having been informally (although irregularly) incorporated by reference in the decision.

brief transcript of the hearing before the referee.[3]   There seems to be no substantial disagreement between the parties concerning the facts or the form of the pertinent regulations or manual.   See fn. 4, *infra.*

Mrs. Carroll is 47, divorced, and widowed.   She had two children living with her in July, 1967, Dennis (then sixteen years old but nearly seventeen) and Kathleen (then nearly thirteen).   Four other children did not live with her.   Until the late summer of 1967, she had received $130 a month from Social Security which was to be cut in half because Dennis had gone to work.   She received $15 a week from Dennis's earnings.   She rented for $65 a month a five-room apartment, heated only by two stoves.   An approved budget of needs of $97 a month became effective on October 1, 1966.   Dennis's net earnings (after $6 a week for work related expenses and deductions) were $62.06.   He has threatened to move out of his mother's apartment if he has to give her his entire pay.   One older son of Mrs. Carroll has moved out.   Other sons (presumably adults) are not at home.

The referee's decision gave as reasons for the department's decision: (1) Mrs. Carroll had total monthly income (Social Security, $130.20; Dennis, $135.51) of $265.71.   The referee disregarded $50 monthly net income of Dennis, a child under eighteen.[4]   (2) The department computed her income needs as $227.20 (Group I, family of three, $194.60

---

[3] For the purpose of future court reviews under G. L. c. 30A, the department might appropriately provide by regulation for the referee to make, upon request, supplemental findings and rulings to explain and clarify what (in view of the volume and character of these cases) must necessarily be somewhat summary decisions, whenever it becomes apparent that a court review is to take place in a particular instance.

[4] The pertinent manual (Massachusetts Public Assistance Policy Manual, c. IV, § B, July 1967, revision) provides in part (emphasis supplied): "All income . . . must be considered in determining need of recipients of public assistance.   All income and resources which are available or can be made available are to be considered, *but only income and resources which are actually being received shall be deducted.* . . . [I]ncome which belongs entirely to an individual . . . must be allocated to that person's needs rather than to other members of the family. . . . *Item 7.* . . . Net earnings represent the amount of wages available after deducting expenses incident to employment. . . . In addition [to certain expenses mentioned specifically], the employed person must be allowed to retain an amount as available up to $15 a week . . . . Any balance remaining after deduction of the foregoing from gross earnings must be considered income to be applied to the budget. . . . *Item 11.* In AFDC and GR [General Relief, G. L. c. 117] the total net earnings of chil-

*plus* one child, seven to twelve, $12.30, and one child, thirteen to twenty, $20.30). Because her income computed in accordance with the manual exceeded her budgeted needs thus computed, the referee denied her appeal for reinstatement of AFDC.

Mrs. Carroll's principal contention is that Dennis's monthly net income above the $15 a week paid to his mother should not be included in her budget in computing her need for AFDC assistance. The department referee, by his decision, allowed the deductions from gross income required by manual Items 7, 11, and 20 (fn. 4) and converted the weekly net earnings to a monthly figure. He subtracted $50 a month from Dennis's earnings pursuant to Item 20 b (as net income of a child under eighteen to be disregarded). He attributed to the Carroll family income the balance of Dennis's net monthly earnings. The department contends that this action was consistent with the precise requirements of the manual (fn. 4). Mrs. Carroll takes the position that, viewing the manual as a whole, the department's action was improper and inconsistent with the manual in various respects.

(a) She contends that Item 11 (fn. 4) requiring the total net earnings of children to be deducted is inconsistent with Item 15 relieving a brother from responsibility to contribute to a sister's support. The only expressed exception to the flat deduction rule of Item 11 is where Item 20 otherwise provides. Item 20 b in explicit terms tells how much of

dren are to be deducted as a resource from the family budget except as otherwise provided in item #20. . . . *Item 15.* No legal responsibility to contribute to each other's support exists between brothers and sisters . . . . However, a voluntary contribution from any of these persons is deductible income. . . . *Item 20.* Certain income of children in AFDC and GR shall be disregarded in determining the amount of the assistance payment. . . . *b.* $50 per month of any net earned income of *a child under 18 years of age shall be disregarded.* However, not more than a total of $150 per month of earned income of all such children living in the same house *may* be disregarded. *c.* A single child 18 years of age or over living with his parent . . . shall have an earned income exemption of $2200 per year in addition to federal and state income taxes which shall be available for his personal needs . . . . Of the income in excess of the exemption one-third shall be considered a resource. If . . . being received, it is to be deducted from the budgeted [family] needs . . . . In the event of failure . . . of a child . . . to make his contribution, assistance shall be granted. . . ."

the earnings of a child under eighteen shall be disregarded. The referee did disregard this amount of Dennis's earnings. Item 11 and Item 15 are consistent if Item 15 is interpreted as applying only to adult brothers and sisters who are not living at home or are not dependent children.

(b) Mrs. Carroll contends that there is discrimination against children under eighteen under Items 20 b and 20 c in favor of persons eighteen or over (1) by permitting those eighteen or over to retain a greater amount of their earnings without attributing it to the family resources, and (2) by failing to disqualify the family from AFDC if the family does not receive the part of the earnings of the person eighteen or over properly required to be attributed under Item 20 c to family resources. The referee's interpretation is consistent with the language of Items 11 and 20. The regulation appears to proceed on the assumption that it is reasonable to treat a child eighteen or over as entitled to retain a greater part of his earnings than one under eighteen. We cannot say that it is unreasonable or arbitrary for the regulation to assume (1) that a person eighteen or over is more nearly an adult and is likely to have greater financial needs and ordinarily more desire for independence than a person under eighteen, and (2) that there is need for greater incentive to lead him to remain in the family home than for a child under eighteen, who ordinarily needs and desires family life.

(c) It is argued that Item 20 b and Item 11, as applied to Dennis, are inconsistent with the provision in the introduction to c. IV, § B, of the manual (fn. 4) that "only income . . . actually being received shall be deducted." The general introductory language is inconsistent with the explicit provisions of Item 11 and Item 20. It becomes consistent, however, if it is deemed to apply only to the receipt of money due under legally imposed obligations (e.g. alimony, court ordered support payments). See U. S. Department of Health, Education, and Welfare, Handbook of Public Assistance Administration, Part IV, § 3120, pp. 3–4, as amended April 10, 1967.

We conclude that the referee's decision complied with the manual requirements.

2. Mrs. Carroll also argues that the manual provisions are inconsistent with the underlying State and Federal statutory provisions governing AFDC. These statutes are designed to be harmonious.

The underlying Federal statute is found in 42 U. S. C. § 601 (1964) et seq. The allowance of Federal aid under the AFDC program is dependent upon approval of the Massachusetts plan by the Secretary of Health, Education, and Welfare. See 42 U. S. C. §§ 601, 602 (a), 603 (1964). Federal assistance may be withdrawn if an approved State plan fails to comply substantially with any provision required by § 602 (a). See § 604 (a) (2). The Massachusetts AFDC program is governed by G. L. c. 118. Chapter 118, § 2 (as amended through St. 1962, c. 556, § 1, and prior to its amendment by St. 1967, c. 658, § 28; see fn. 1), directed each local board of public welfare to "aid every parent in properly bringing up, in his or her own home, each dependent child [defined in § 1]. . . . The aid furnished . . . shall be in an amount to be determined in accordance with budgetary standards as approved by the department [of Public Welfare] . . . ." Chapter 118, § 5, as it read (as amended through St. 1963, c. 432, § 6, prior to the effective date of St. 1967, c. 658) permitted the department to promulgate regulations and to take other action "in conformity with all requirements governing the allowance of federal aid to the commonwealth as a grant for aid to families with dependent children."

The Federal statute (as amended in 1965 by Public Law 89–97, Title IV, § 410, 79 Stat. 423, provides in 42 U. S. C. § 602 (a) Supp. II (1965–1966) that a "State plan for aid and services to needy families with children must . . . (7) provide that the State agency shall, in determining need, take into consideration any other income and resources *of any child or relative claiming aid to families with dependent children*, as well as any expenses reasonably attributable to the earning of any such income; except that, in making

such determination, (A) the State agency may disregard not more than $50 per month of earned income of *each dependent child under the age of 18* but not in excess of $150 per month of earned income of such dependent children in the same home . . ." (emphasis supplied). See, however, the 1968 amendment of this section to become effective July 1, 1969, by Public Law 90–248, Title II, § 202 (b), 81 Stat. 881 et seq.; see 42 U. S. C. § 602 (a), Supp. III (1965–1967) pp. 2047–2051. The department, we think, reasonably construed this section (as it read in 1967) to require it to take into account as a family resource, for the purposes of the AFDC program, the income of each dependent child under eighteen, living with a parent or relative, at least to the extent that such child's earnings exceed $50 a month, provided that no more than $150 a month of the earned income of all dependent children "in the same home" shall be disregarded. See Sen. Rep. No. 404, 89th Cong. 1st Sess. part E, 5 (b), p. 149 (1965). We think that the manual Items 11 and 20 (fn. 4) reasonably carry out the policy and specific provisions of § 602 (a) (7).

Essentially, Mrs. Carroll's contentions are directed to the policy of the Federal statute which the department reasonably has carried out in the manual (fn. 4). Changes in the policy cannot be made by the courts, and it is not for us to pass upon the wisdom of such changes. See note, 115 U. of Pa. L. Rev. 1307, 1321–1324. They properly are to be made only by Congress or the Legislature, or by new Federal or State departmental regulations consistent with applicable statutory provisions. We hold merely that the applicable regulations (manual) were consistent with the statutes in force when this matter was heard by the department and that they have been reasonably applied to Mrs. Carroll.

3. At the arguments it was stated that some expected adjustments (not taken into account by the department's decision) in the Social Security payments to Mrs. Carroll because of Dennis's earnings might require some reconsideration of the AFDC payments to her. Accordingly, the

final decree is affirmed but with leave to Mrs. Carroll to apply in the Superior Court for recommittal of the case to the department for reconsideration of any aspects of its decision, relating to any period here reviewed, which may have been affected by any redetermination of amounts payable to her for Social Security or by any changes in the Federal or State statutes or regulations subsequent to the department's decision.

*So ordered.*