FREIDA POMEROY *vs.* DEPARTMENT OF PUBLIC WELFARE
& others.[1]

Hampden.    March 20, 1974. — April 8, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT, &
ARMSTRONG, JJ.

*Public Welfare.    State Administrative Procedure Act.    Equity Plead-
ing and Practice,* Review under State Administrative Procedure Act.

Any legitimate grievance which the recipient of assistance from the
Department of Public Welfare under the program of Aid to Fam-
ilies with Dependent Children had by reason of the department's
rearrangement of payments as between it and support payments
from the recipient's former husband for their three children, aggre-
gating the family's budgeted need as computed by the department
without reflecting the needs of a child not living in the recipient's
home, was barred by the recipient's failure to appeal to the depart-
ment within sixty days of written notice of the department's original
determination and her right to appeal therefrom or within sixty
days of the rearrangement where the department's rearrangement
must have been apparent to her from the checks that she received.
[180-182] GOODMAN, J., dissenting.

PETITION filed in the Superior Court on August 26, 1971.
The case was heard by *Moriarty,* J.
*Francis X. Spina* for the plaintiff.
*Richard T. Dolan,* Assistant Attorney General (*Nicholas
P. Arenella,* Assistant Attorney General, with him) for the
Department of Public Welfare & others.

GRANT, J.[2]    The plaintiff has appealed from a decree of
the Superior Court affirming (on a bill for review under

---

[1] The Commissioner of Public Welfare and various officials of the
department.

[2] The appeal in this case was argued on March 20, 1974, before a
panel comprised of Justices Rose, Goodman and Grant, and on that
date one of the members of the panel was assigned to the preparation
of an opinion which would reflect the views of the panel. In February

G. L. c. 30A, § 14) a decision of the Department of Public Welfare (department) rendered under G. L. c. 18, § 16 (as amended through St. 1969, c. 885, § 11), denying the claim of the plaintiff which is hereinafter described. The case is physically before us on papers which include the record of the proceedings before the department, something called "Parties Agreed Statement of Facts" which was submitted to and considered by the Superior Court,[3] and a copy of what we are advised is the pertinent version of the department's Massachusetts Public Assistance Policy Manual (Manual).[4] The material facts may be summarized as follows.

On January 10, 1964, the plaintiff's then husband secured from the Probate Court for the county of Hampden a decree of divorce nisi[5] from the plaintiff in which she was awarded custody of the three minor children of the parties and he was ordered to make weekly payments to her of $40 for the support of the children. For some reason which is not entirely clear, such payments as were made by the former husband were made to the probation office of

___

of 1975 the other three justices were called in to take part in the decision pursuant to Rule 24(a) of Mass. R.A.P., 365 Mass. 872 (1974). On March 19, 1975, the author was directed to bring in an opinion which would reflect the views of a majority of all the justices. The opinion prepared by the author was approved by such a majority on March 28, 1975.

[3] This statement includes numerous stipulations as to facts of which there was no evidence during the course of the hearing before the referee appointed under G. L. c. 18, § 16. See subparagraphs (4), (6) and (7) of the third paragraph of G. L. c. 30A, § 14 (as amended through St. 1968, c. 637, § 1), and the penultimate paragraph of said § 14. See also *Multi-Line Ins. Rating Bureau* v. *Commissioner of Ins.* 357 Mass. 19, 20, 24 (1970). Our disposition of this case does not require us to decide the status of such a statement in proceedings brought under § 14.

[4] No part of the manual appears to have been offered in evidence at the hearing in the Superior Court. It is now before us by agreement of the parties pursuant to a request made by the members of the panel at the time of argument. See *Carroll* v. *Acting Director of Pub. Welfare,* 355 Mass. 182, 183, n. 2 (1969).

[5] The decree subsequently became final.

the District Court of Springfield, which remitted them to the plaintiff until December 11, 1967.

On March 16, 1967, the plaintiff applied to the department for Aid to Families with Dependent Children (AFDC) assistance payments for herself and the three children. On March 28, 1967, the department approved the application, subject to the qualification that the plaintiff's family budget was to be determined on the basis of her needs and those of two of the children who were then living in the plaintiff's home, and would not reflect the needs of the third child, who had been placed in the Belchertown State School in 1965 and who still resided there.[6] Because she was receiving (through the District Court) some support payments from her former husband, the plaintiff's monthly AFDC payments were in the amount of the budgeted need as thus computed, less the support payments actually received, which were treated as an "available resource" (Manual, c. IV, § B, p. 1). The plaintiff was duly advised in writing of the department's determination and of her right to appeal therefrom within sixty days if dissatisfied (Manual, c. VI, § B, p. 2). She did not appeal.

From April 7, 1967, until December 11, 1967, the plaintiff received support payments from her former husband which were supplemented by AFDC assistance payments in such amounts that her combined income from both sources was equal to the amount of the family budget, as computed in the manner previously described. On December 11, 1967, the department arranged with the District Court to have the sporadic support payments which were being made by the former husband remitted to itself, while at the same time increasing the amounts of its direct payments to the plaintiff so that they would be equal to the total amount of the computed family budget (Manual, c. IV, § B, p. 8).[7] Those arrangements for payments persisted

---

[6] This child appears to have remained at Belchertown at all material times.

[7] The practical effects of these changes appear to have been (1) to relieve the plaintiff of the risks and hardships involved in her former husband's not making timely payment in full of the support payments

until August 3, 1970, when the plaintiff relinquished custody of the child at Belchertown to her former husband pursuant to a modification of the divorce decree.[8]

The department did not give the plaintiff an express written explanation of its actions in rearranging payments in the manner just described. We think, however, that the purpose of any such requirement was met in this case. The plaintiff must have understood the rearrangements from the facts (a) that she was no longer receiving payments from the District Court and (b) that she was receiving grant checks which were increased by amounts which reflected the support payments which her former husband should have been making to the District Court.[9] The plaintiff, although aware of her right of appeal if dissatisfied, took no appeal from the rearrangement within sixty days (Manual, c. VI, § B, p. 2) of December 11, 1967, or within sixty days of her first learning of the rearrangement.

At various times following December 11, 1967, the plaintiff, according to her testimony at the departmental hearing, made purchases of clothing and personal effects for the child at Belchertown.[10] On several occasions she tried without success to persuade the department to reimburse her for such expenditures.[11] The appeal which gave rise to the

---

ordered by the Probate Court and (2) to avoid the inconveniences involved in the plaintiff's having to apply for (and the department's having to make) supplemental payments whenever the former husband should fall behind in his payments. There was absolutely no change in the total income of the plaintiff. Manual, c. IV, § B, p. 1.

[8] The plaintiff and her former husband were apparently agreeable to his resuming direct responsibility for the support of the child at Belchertown. See n. 12, infra, third sentence.

[9] She testified at the hearing of her departmental appeal that she had discussed the rearrangement with her social workers on several occasions following December 11, 1967. Accordingly, we look on the increased amounts of the plaintiff's checks as the practical equivalent of formal written notice of the department's actions in the rearrangement.

[10] The times and total amounts of any such payments were never established.

[11] On at least one occasion the department appears to have given the plaintiff $100 for the purpose of expenditures for the child at Belchertown.

present proceedings was filed by the plaintiff with the department on December 14, 1970. It purports to be from some unidentified official's refusal to approve a request made by the plaintiff on November 23, 1970, that she be paid $937.66, which is said to represent one third of the aggregate of the support payments made by the former husband between December 11, 1967 (when the department rearranged the method of payments), and August 3, 1970 (when the plaintiff relinquished custody of the child at Belchertown).

The theories of the plaintiff's request (which was denied by the department) appear to be that the department, which had refused to include the needs of the child at Belchertown in the determination of the AFDC family budget and thus had not been supporting that child, acted wrongfully (a) in diverting to itself the one third of the support payments which had been intended by the Probate Court for the use of that child and (b) in forcing the plaintiff to use for the support of that child portions of the budget which had been intended by the department to meet the needs of the other two children who were living with the plaintiff.

We do not pause to examine the plaintiff's theories in detail,[12] for a majority of the court are of the opinion that any legitimate grievance the plaintiff may have had with respect to the rearrangement of payments which was effected on December 11, 1967, was barred by the expiration of the aforementioned sixty-day appeal period long before the plaintiff purported to appeal on December 14, 1970.[13]

---

[12] The plaintiff has not offered any legal authority in support of the proposition that any one child is entitled to an aliquot share of an aggregate amount which a Probate Court may order paid to a parent for the support of a group of children. Nor has she offered to prove any correlation between the $937.66 and the aggregate of the amounts she may have spent on the child at Belchertown (see nn. 10 and 11). Nor is there any effort to reckon with the amounts which the referee found were being paid by the plaintiff's former husband directly to the Belchertown State School and which he subtracted from the support payments made to the District Court after January of 1970.

[13] We pass the point that the plaintiff's real complaint (as the referee concluded) is as to the March 28, 1967, decision (from which no

Although "a decision in favor of an appellant applies retro-actively to the date the incorrect action was taken" (Man-ual, c. VI, § C, p. 3), that section clearly applies only to action from which a timely appeal has been taken. The plaintiff's request for $937.66 was unequivocally retroactive in nature. It sought modification or reversal of a course of action which had been initiated by the department more than three years earlier (and of which the plaintiff had been given timely written [see n. 9] and oral notice), and which had terminated more than three months earlier. We see no error in the department's denial of the request. To hold otherwise would be to nullify the requirement that appeals be filed within sixty days of written notification of the action to be appealed from.

*Decree affirmed.*

GOODMAN, J. (dissenting). In my view the department wrongfully denied Mrs. Pomeroy's claim that she was en-titled to one-third of the funds paid to the department by the probation officer of the District Court of Springfield who had received them as support, ordered by a Probate Court for Mrs. Pomeroy's three children, from the father of the children, only two of whom were eligible for and given aid by the department. The third child, R——, had been placed in the Belchertown State School in 1965, and her needs were not included in the AFDC grant made on March 28, 1967, because she was not living at home. G. L. c. 118, § 1, as amended by St. 1967, c. 658, § 27. 42 U. S. C. § 606(a). Yet the department, on December 11, 1967[1],

appeal was taken) that the needs of the child at Belchertown were not to be reflected in the computation of the aggregate amount of the plaintiff's AFDC family budget.

[1] Prior thereto, from April 7, 1967, Mrs. Pomeroy received support payments from her former husband through the District Court, and these were supplemented by AFDC payments. Mrs. Pomeroy makes no claim that, and it is not necessary to decide whether (for the rea-sons herein discussed), her AFDC payments during this period were improperly reduced by support payments properly allocable to R——. See *Gilliard* v. *Craig,* 331 F. Supp. 587, 593 (W. D. N. C. 1971), aff'd. 409 U. S. 807 (1972).

arranged with the District Court to turn over to the department the father's support payments for all three children, although the department was making payments to Mrs. Pomeroy for only two of the children. Mrs. Pomeroy had no notice of this change until after it had been accomplished.[2] The result was obvious. Mrs. Pomeroy used funds designated for the two children to meet the expenses of R———'s needs at the Belchertown School.

On or about November 23, 1970, Mrs. Pomeroy requested that one-third of the $2,813 ($937.66) paid to the department through the District Court[3] until August 3, 1970

---

[2] The facts recited in this opinion are taken from the Agreed Statement of Facts which the parties filed in the Superior Court as part of the record. The majority opinion expresses some doubt as to its status; it seems to me to have been quite clearly intended as a statement of agreed facts setting out a case stated as provided in G. L. c. 30A, § 14(4). *Multi-Line Ins. Rating Bureau* v. *Commissioner of Ins.* 357 Mass. 19, 20, 24 (1970). See *Warren* v. *Street Commrs. of Boston,* 183 Mass. 119, 119-121 (1903). It reflects generally the evidence in the transcript of the hearing with which the department apparently does not take issue, and clarifies such matters as specific dates, amounts, etc.

[3] The actual payments made by the father of the children were generally less than the total of $40 per week awarded by the Probate Court. The majority opinion indicates some doubt whether the amount is correct and whether some adjustment may not be necessary (1) because the referee stated in her decision that after January 29, 1970, the father paid for R———'s needs directly to the Belchertown School, deducting her share from his support payments (majority opinion, fn. 12), and (2) because at some time $100 was paid to Mrs. Pomeroy by the department in connection with R———'s needs (majority opinion, fn. 11). A short answer is that the amount of $937.66 is stipulated in the Agreed Statement of Facts, which characterizes it as "paid into the Welfare Department for the support of R——— ...." Further, however, this amount derives from District Court ledger sheets attached to the Petition for Review which were apparently at the hearing before the referee ("The records we have were, is what we received from the court ... [l]edger sheets. ...").

1. The referee's statement is not borne out by the transcript. A letter dated January 29, 1970, from the District Court, included in the transcript, merely says that "[h]e [the father] intends to provide support and clothing for his child in Belchertown directly between he and the child." Mrs. Pomeroy testified that "Belchertown never got any money. Never got any at all. ... Dr. Bowser [of Belchertown] wouldn't agree with [the arrangement] ...." Nor do the ledger sheets, as I read them, supply any additional light. Thus the Agreed Statement of Facts stipu-

(when she relinquished R——'s custody to her former husband) be paid to her. This request was denied, and on December 14, 1970, the plaintiff appealed under G. L. c. 18, § 16, as amended through St. 1969, c. 885, § 11.[4]

I submit that the referee's "findings" that "the agency acted correctly in applying all available income to the needs of the family members in the home" and that the appeal was untimely are erroneous as a matter of law (G. L. c. 30A, §§ 14[7][c], 14[7][g], as renumbered by St. 1973, c. 1114, § 3) and, further, that (contrary to the trial judge's ruling) Mrs. Pomeroy's claim was properly brought against the department under G. L. c. 18, § 16.

1. I see no justification for the department's ruling that support paid for R—— could be applied to "the needs of the family members in the home." The department's only claim to funds paid by the father of the children for their support arose under G. L. c. 18, § 21, which provides in relevant part, "The department shall be subrogated to the rights to support and maintenance of any welfare recipient to the extent of any payments made by the department to such recipient." However, R—— was not a "welfare recipient"; she had been expressly excluded from the AFDC grant originally made by the department because she was not at home but at the Belchertown School. Thus the department had no right in connection with payments for the

lates that Mrs. Pomeroy "paid the expense of R——'s personal needs" until August 3, 1970. In any event, the referee's statement, if accepted (though contrary to the Agreed Statement of Facts), would merely require a recalculation.

2. It is not clear just when the $100 was paid, and it was apparently not deemed of sufficient significance to be mentioned in the Agreed Statement of Facts.

4 The statute provided in relevant part: "Any person aggrieved by the failure of the department to render adequate aid or assistance under any program of aid or assistance administered by the department . . . shall have a right to a hearing, after due notice, upon appeal to the commissioner of public welfare. Such hearing shall be conducted by a referee . . . as an adjudicatory proceeding under chapter thirty A. . . . The decision of the referee, when approved by the commissioner, shall be the decision of the department and shall be subject to review in accordance with the provisions of . . . chapter thirty A."

other two children to appropriate funds ordered for R——'s support by the Probate Court.

Further, § 21 must be construed in harmony with 42 U. S. C. § 602 (a) (7) (1970)[5] (see *Carroll* v. *Acting Director of Pub. Welfare of Cambridge,* 355 Mass. 182, 187 [1969]), which is binding on the department. *King* v. *Smith,* 392 U. S. 309, 317 (1968). *Banner* v. *Smolenski,* 315 F. Supp. 1076, 1078-1079 (D. Mass. 1970). That section of the Federal Code has consistently been interpreted as prohibiting consideration of support payments intended for the benefit of a non-AFDC recipient in computing AFDC grants. *Gilliard* v. *Craig,* 331 F. Supp. 587, 593 (W. D. N. C. 1971), aff'd. 409 U. S. 807 (1972). *Dorsey* v. *State Dept. of Social Servs.* 266 Md. 162, 165-166, 169-170 (1972). *Bourque* v. *Commissioner of Welfare,* 308 A. 2d 543, 546-547 (Conn. Cir. Ct. 1972). See also *Randall* v. *Goldmark,* 366 F. Supp. 947, 951-953 (D. Mass. 1973); *Howard* v. *Department of Pub. Welfare,* 272 A. 2d 676, 679 (D. C. Ct. App. 1971). In those cases the funds applicable to a non-AFDC recipient were generally used to reduce the AFDC grant. I can see no real distinction between that situation and this one in which, as a condition of the grant, monies designated for Mrs. Pomeroy to use for R——'s support were retained by the department.

The department's brief suggests that R—— has no "property right" in the Probate Court decree. This seems to me beside the point. Once the money was received by the District Court, it became a "joint resource" in accordance with the Manual, c. IV, § B, p. 1, which provides, "It is important to determine to which members of the assistance household the income belongs. A joint resource between two or more owners is divided equally." Under that for-

---

[5] "A State plan for aid and services to needy families with children must . . . provide that the State agency shall, in determining need, take into consideration any other income and resources of any child . . . claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child . . . claiming such aid . . . ."

mula, the particular resource (the support payments) is divided among the other two "members of the assistance household" to which they are applicable (the other two children), and R——, who with them is a "joint owner." This reading of the regulation is not disputed by the defendant. It is obviously intended to eliminate a time-consuming accounting based on Mrs. Pomeroy's actual expense and makes administrative sense.[6]

2. The appeal was timely. As is clear from the Statement of Agreed Facts, Mrs. Pomeroy "never received notice of" the department's action in diverting the support payments for R—— from the District Court. Nor did she receive "notice of her right to appeal said action," and her appeal on December 14, 1970, was therefore timely. The sixty-day period, if it began to run at all, began sometime on or after November 23, 1970, when the denial of her request for payment precipitated the appeal. It is immaterial (as the trial judge ruled and the majority opinion does not dispute) that Mrs. Pomeroy did not appeal the original determination that R—— was not entitled to an AFDC grant — though this is the basis for the department's ruling that the appeal was not timely. Mrs. Pomeroy had no quarrel with that original determination.

The majority ignores the Agreed Statement of Facts and predicates its position on an inference of actual knowledge of just what the department had done when it diverted the funds from the District Court in December of 1967, and of her right to appeal. There was, of course, an awareness that a change had occurred soon after December 11, 1967, though whether that was sufficient notice to her of the ramifications of the department's action seems to me highly dubious. See *Vargas* v. *Trainor,* 508 F. 2d 485, 489-490 (7th Cir. 1974). But, with all respect, I find no basis for an inference that Mrs. Pomeroy was even aware of her right to appeal prior to November 23, 1970, at which time she went to an OEO office.

---

[6] There is no claim for more than the $937.66. Cf. *Shea* v. *Vialpando,* 416 U. S. 251 (1974).

Pomeroy *v.* Department of Public Welfare.

In any event, the regulations are clear. The Manual provides for *written notice* of the right to appeal an action of the department.[7] And this requirement is also mandated by the Federal regulations.[8] It seems to me particularly important that there be strict adherence to these provisions. Persons subject to the welfare program are not apt to be sophisticated in the ways of a bureaucracy. The response to a change made by the department without explanation is hardly likely to be a telephone call to a lawyer.

3. Further, the appeal was properly filed under G. L. c. 18, § 16.[9] The regulations give this section an expansive application. Thus the Manual, c. VI, § B, p. 1 ("Complaint and Appeal Procedures: Appeals"), provides, under the heading "Basis of Appeal," that an "[a]pplicant or recipient has the right of appeal when he is dissatisfied for any of the following reasons: ... (7) Assistance seems inadequate. (8) Agency policy as it affects his situation ...." Also, the Manual, c. VI, § A, p. 1 ("Complaint and Appeal Procedures: Inquiries and Complaints"), provides that if a "complaint"[10] "cannot be adjusted ... the individual ... should be informed of the right to appeal and have a fair

---

[7] Manual, c. VI, § B, p. 1, provides: "Written notification must be sent to the applicant, recipient or certain institutions informing the person or institution, as the case may be, of the right of appeal and an explanation of the appeal procedure."

[8] Forty-five C. F. R. § 205.10(a)(3) (1974) provides: "Every applicant or recipient shall be informed in writing at the time of application and at the time of any action affecting his claim:

(i) Of his right to a hearing ... ;

(ii) Of the method by which he may obtain a hearing ...."

The virtually identical predecessor of this regulation which goes back to at least 1968 may be found in the Handbook of Public Assistance Administration, Part IV, § 6200(f). See 35 Fed. Reg. 8448-8449 (1970); 36 Fed. Reg. 3034 (1971). See generally LaFrance, Schroeder, Bennett, and Boyd, Law of the Poor, 264-265 (1973).

[9] The majority opinion does not reach this issue; the trial judge dealt with it in denying relief, he having found that the appeal was timely.

[10] "A complaint is a general or specific written or verbal communication which expresses the dissatisfaction of a person ... concerning the policies and procedures in relation to the administration of any of the public assistance programs." Manual, c. VI, § A, p. 1.

hearing or review without a hearing."[11] Even at its narrowest, it can hardly be said that receipt of amounts less than those to which a recipient is entitled can be said to be "adequate." Administrative appeals have generally been allowed in other jurisdictions in similar situations. *Howard* v. *Department of Pub. Welfare,* 272 A. 2d 676, 678 (D. C. Ct. App. 1971); *Bourque* v. *Commissioner of Welfare,* 308 A. 2d 543, 545 (Conn. Cir. Ct. 1972); *Dorsey* v. *State Dept. of Social Servs.* 266 Md. 162, 164-165 (1972). And such an appeal would seem to be required by the Federal regulations. See 45 C. F. R. § 205.10(a) (5) (1974).

Accordingly, I would set aside the decision of the department and order (G. L. c. 30A, § 14[7], as renumbered by St. 1973, c. 1114, § 3) that the department take such steps as may be necessary to effect the payment to Mrs. Pomeroy of the sum of $937.66 (see fn. 3), the stipulated amount due retroactively. *Bourque* v. *Commissioner of Welfare, supra,* at 547. See *Alexander* v. *Weaver,* 345 F. Supp. 666, 675 (N. D. Ill. 1972), vacated on other grounds sub nom. *Edelman* v. *Townsend,* 412 U. S. 914 (1973); Manual, c. VI, § C, p. 3. Interest on that sum should be computed from the date of the filing of the administrative appeal on December 14, 1970. *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 359 Mass. 206, 209-210 (1971).

---

[11] An additional indication of the department's interpretation of the scope of G. L. c. 18, § 16, is provided by the department's form given to recipients initiating an appeal which states: "The General Laws provide that if you are not satisfied with any action taken in your case, you have the right to appeal and receive a fair hearing before a referee...." Form SS-10 (Rev. July, 1968) (as reproduced in the Manual).