MARY LOU MCCARTHY *vs.* COMMISSIONER OF
PUBLIC WELFARE.

Worcester. September 13, 1979. — November 5, 1979.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Public Welfare. Aid to Families with Dependent Children. Adminis-
   trative Law,* Regulations.

Children who had been voluntarily placed in the foster care of the De-
   partment of Public Welfare under G. L. c. 119, § 23 cl. A, and who
   attended full-time residential schools as a result of contracts en-
   tered into by the department were not precluded from eligibility
   for benefits under the Aid to Families with Dependent Children
   program. [604-609] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court on
August 12, 1976.

The case was heard by *Garbose, J.,* a District Court
judge sitting under statutory authority.

*Emily S. Starr* for the plaintiff.

*Anne Josephson,* Assistant Attorney General, for the
defendant.

GREANEY, J. The plaintiff appeals from a judgment
upholding a determination by the Department of Public
Welfare (department) that, because she had voluntarily
placed her sons in the foster care of the department
(G. L. c. 119, § 23 cl. A), which contracted with residen-
tial schools to provide year-round treatment for them,
the children were ineligible for benefits under the Aid to
Families with Dependent Children program (AFDC). 42
U.S.C. § 601 et seq. (1976). G. L. c. 118. We conclude
that voluntary placement with the department under
G. L. c. 119, § 23 cl. A, does not, as a matter of law,
preclude a finding that the children are, in fact, "needy"

and "dependent." 42 U.S.C. § 606(a) (1976). G. L. c. 118, § 1. We also conclude that the plaintiff's two sons were both needy and dependent upon her during their frequent stays at home and thus met Federal and State statutory and regulatory requirements for eligibility for benefits. Accordingly, the judgment is reversed and the matter remanded for a determination of the prorated benefits that were due but not paid.

The facts and background of the case are drawn from the uncontroverted evidence presented to the department's hearings officer. The plaintiff voluntarily placed her son Gary in the foster care of the department in March, 1972; the department then enrolled him in a residential school in Stratford, New Hampshire, and entered into fifty-two week contracts for his care with the school. The plaintiff similarly placed her son Richard with the department in August, 1974, for the purpose of enrolling him in a residential school in Barre, Massachusetts; the department also entered into fifty-two week contracts for Richard's care.[1] At the time of these placements, Gary was fifteen and Richard was thirteen. The plaintiff's daughter continued to reside with her. Both schools have encouraged the plaintiff to have the boys home as often as possible as part of their treatment, and both boys did come home frequently for extended peri-

---

[1] The hearings officer found that both placements were occasioned by behavioral problems of the children. We take notice that both placements occurred prior to September 1, 1974, the effective date of the so-called Special Education Act promulgated by St. 1972, c. 766 (G. L. c. 71B; hereinafter "chapter 766"), which created a comprehensive plan administered by local school committees for the education at public expense of children with special needs. Prior to the effective date of this act there were no other means available besides the utilization of a voluntary placement into foster care through the department under G. L. c. 119 to obtain expensive but necessary residential special education for children who were not delinquent or otherwise before the Juvenile Court.

ods of time.[2] When at home, Richard required full-time supervision. To achieve this supervision, the plaintiff planned with a school psychologist and a social worker the activities she would provide for him and scheduled her work around his visits, even when she had no vacation time coming. Gary's school encouraged him to bring friends home with him who did not have families of their own to visit, and the plaintiff also agreed to this arrangement. The plaintiff maintained a two-bedroom apartment in order to have a bedroom for her sons when they returned home, although she could have obtained a one-bedroom apartment for at least fifty dollars a month lower rent. In addition, she incurred extra costs for food, transportation for the boys, telephone calls to them at school, and sundries and household supplies both away and at home.[3] Until September, 1975, the plaintiff lived in Leicester, and was a recipient of AFDC. All three of her children were treated as eligible for AFDC benefits by the department's Leicester office. Prior to January, 1975, the plaintiff's benefits for the two boys were calculated on a daily basis, the plaintiff receiving payment for food and other needs only for the days the boys were home. In January, 1975, the department changed to a system of consolidated grants, and, as a result, the Leicester office included the two boys "in full" in plaintiff's AFDC budget.[4] In September, 1975,

---

[2] Gary resided with the plaintiff at least one-third of the year; Richard well over seventy days annually.

[3] Although both schools provided clothing and other necessary supplies, the plaintiff pointed out that in addition to her maintaining sheets and blankets for the boys, "[t]hey need underwear or they need socks or they need deodorant and toothpaste and they forgot their toothbrush."

[4] This action was taken in accordance with a directive from the Commissioner of the department, transmitted by way of State Letter 354 (January 10, 1975), which updated the Massachusetts Public Assistance Policy Manual Chapter IV, Section A, Part 1, at 14, to provide that "[w]hen a dependent eligible child is attending school or college

plaintiff moved and as of October, 1975, was assigned to the Shrewsbury office of the department. By an unsigned memorandum dated October 8, 1975, the office of assistance payments of the department informed departmental staff that the consolidated grant policy included the following:[5]

> *"Children in Care of Family and Children's Services, Department of Mental Health, Department of Public Health, Division of Youth Services:* These children are not in the care of the parent/grantee-relative and are supported by another agency or department of the State. They are not eligible for AFDC and should not be counted in the number of persons participating in the AFDC grant."

Relying on the language just quoted and the fact that the boys were in the care of the department's division of family and children's services, the Shrewsbury office did not include them in calculations for the plaintiff's AFDC budget commencing in November, 1975. She appealed from the noninclusion of Richard and Gary in her AFDC budget. G. L. c. 18, § 16. After a hearing, the referee concluded that "both children . . . are in reality not in the care nor custody of appellant but have been voluntarily placed under the auspices of [the department]," and upheld the actions of the Shrewsbury office in denying benefits. The plaintiff sought judicial review of this decision under G. L. c. 30A, § 14. The judge reviewed the administrative record and affirmed the department's decision.

---

away from home, *all* his needs are to be included in the basic budget in accordance with the Monthly Budget Item Schedule."

[5]The same memorandum, however, included this statement of policy as to children in boarding schools:

> *"Children Away at School:* This policy has not changed. If the child is a member of the AFDC family, in the care of a parent/grantee-relative, (s)he is counted as one of the persons participating in the AFDC grant."

1. *The applicable standards for eligibility.* The AFDC program is based upon "a scheme of cooperative federalism" in which the Federal government finances a program administered by the States for the benefit of needy, dependent children. *King* v. *Smith,* 392 U.S. 309, 316 (1968). In order to participate in this program, the State plan implementing it must provide that benefits are "furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a)(10) (1976). *King* v. *Smith, supra* at 317. *Townsend* v. *Swank,* 404 U.S. 282, 285 (1971). The grant of benefits "must be measured by federal standards." *Carleson* v. *Remillard,* 406 U.S. 598, 600 (1972). A needy dependent child is defined by Federal statute as a child "who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent" (42 U.S.C. § 606[a][1] [1976]), and who resides with "any of several listed relatives," *Van Lare* v. *Hurley,* 421 U.S. 338, 340 (1975). For purposes of eligibility the child must reside in this relative's home, which is defined as "the family setting . . . as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living." 45 C.F.R. § 233.90(c)(1)(v)(B) (1975). Moreover, the child is considered to be residing in this home, even if he is "a student regularly attending a school, college, or university." 42 U.S.C. 606(a)(2)(B) (1976). 45 C.F.R. § 233.90(c)(1)(vi) (1975). G. L. c. 118, § 1. This holds true even if school attendance requires the child to be "away from home" during the school year. Mass. Public Assistance Policy Manual, 14 Code Mass. Regs. Part 12, at 781 (1975)[6] (see also note 4, *supra*).

---

[6]That policy manual, as updated in December, 1975, contains basically the same provision as the January, 1975, version quoted in note 4, *supra,* although with slightly different wording. It provides in relevant part:

"*Special Factors* When a dependent eligible child is attending school or college away from home, (s)he is to be included in the number of eligible participants in the grant."

Applying these standards to this case, it is clear that Richard and Gary are not barred from eligibility for AFDC benefits solely because they attended full-time residential schools. Both applicable State and Federal precedent would include them in the plaintiff's AFDC budget in full were they away at school with the benefit of full scholarships or if under c. 766 (G. L. c. 71B, § 5), their special education expenses were being paid for by reason of public funds through a school committee. Furthermore, it is uncontroverted that the children actually return home more frequently then do many undeniably eligible children who are away at school under a different financial arrangement and that they are in need of food, a bedroom, and other services while at home.

The department argues that all the children's needs were provided for by the fifty-two week contracts which its division of family and children's services entered into with the schools and that, as a result, any expenses incurred by plaintiff in having the boys home were both voluntary and duplicative. We are unpersuaded by this argument for the following reasons. First, there was evidence that the division, by its regulations, was required to pay the schools directly, that no provision existed for paying relatives for any care provided, and that, in order to keep the boys in the schools, fifty-two week contracts were necessary. Thus, we do not read the contract provisions as indicating a determination by any party that these boys did not need to come home regularly. Contrast *Pomeroy* v. *Department of Pub. Welfare,* 3 Mass. App. Ct. 177, 179 n.6 (1975) (child who "resided" at Belchertown and "remained at Belchertown at all material times" was not included in plaintiff's AFDC grant). Second, the evidence was uncontroverted that the school initiated home visits as soon as practicable after both placements were made and that their professional staff supervised the timing and details of such visits. Clearly such visits were part of the general treatment programs of the boys for which the division contracted.

Third, under the department's reasoning an indigent parent would be well-advised not to have her children home for four years simply because of financial reasons, a result which would be inconsistent with the stated purposes of the AFDC program (see *Haceesa* v. *Heim,* 84 N.M. 112 [1972]; 42 U.S.C. § 601 [1976]) and with the regulations governing the division. See generally "Standards for the licensure or approval of agencies placing children into family foster care or group care," 11 Code Mass. Regs. Part 5, §§ 300-403 (1974). Because the department provided AFDC benefits to only one of the plaintiff's three needy dependent children "[t]he result was obvious. [The plaintiff] used funds designated for [her daughter] to meet the expenses of [Richard and Gary]." *Pomeroy* v. *Department of Pub. Welfare, supra* at 183 (Goodman, J., dissenting). We conclude that the department's standards applicable to this case entitle the plaintiff to the benefits requested. The remaining question therefore is whether the voluntary custody of the boys with the department, under G. L. c. 119, § 23 cl. A, changes that result.

2. *Custody.* When a parent applies to the department for voluntary foster care for a child, G. L. c. 119, § 23 cl. A, as amended through St. 1975, c. 276, §§ 1, 2, expressly provides that "[s]uch acceptance shall entail no abrogation of parental rights or responsibilities, but the department may accept from parents a temporary delegation of certain rights and responsibilities necessary to provide the foster care for a period of time under conditions agreed upon by both and terminable by either." This statutory language, in our opinion, contemplates the creation of individual arrangements between the parents and the department which will vary according to the needs of the particular children who are placed and the needs of their families. The flexibility which underlies this aspect of the statute can be seen by its contrast with the provisions of G. L. c. 119, § 23 cl. C, where the department, upon receiving responsibility for

children by an order of a Probate Court due to a variety of parental disabilities, is assigned specific and enumerated responsibilities. There is nothing in G. L. c. 119, § 23 cl. A, which bars the arrangement that actually occurred here, namely a sharing of responsibility for physical custody of the two boys between the schools and the parent with a measure of legal custody (as defined by the agreement between the parties) in the department. Moreover, the prevailing Federal regulation at the time that benefits were denied provided that a "child is considered to be 'living with' his relative even though . . . (2) [l]egal custody is held by an agency that does not have physical possession of the child." 45 C.F.R. § 233.90(c)(1)(v)(B)(2) (1975). The plain language of this regulation supports the plaintiff's position. Nor was the plaintiff excluded from major decisions concerning the boys' progress while at the schools, as the uncontroverted evidence established that, although the department had placed them with the schools and paid their yearly tuition, it was their mother, and not the department, who was consulted about their day-to-day care by the school staffs.[7]

We also reject the defendant's arguments that the memorandum dated October 8, 1975, expressing a new directive as to placements such as those at issue in this case rises to the level of a consistently applied interpretation of administrative policy. See and contrast *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 491-492 (1978). No duly implemented State regulation existed at any material time

---

[7]We take note of the fact that under the provisions of St. 1972, c. 766, §§ 16 and 17, the department, as the party with legal custody, could have petitioned for a special education evaluation and a change in educational plan for these boys, which would have shifted the burden to the local school committee to provide the school tuition; and, as previously indicated, if the children had been away at school under the provisions of c. 766, they would have been eligible for AFDC benefits "in full."

which barred the consideration of Gary's and Richard's AFDC eligibility on the facts; the memorandum dated October 8, 1975, does not rise to the level of a regulation. *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 346 Mass. 739 (1964). Thus, the regulations which actually governed AFDC benefits after January 10, 1975, would have included the children in full in the plaintiff's AFDC budget (see note 4, *supra*). While it is unclear from the record whether an attempt was made to create a uniform change of policy by all local welfare offices based on the memorandum, it is clear the Leicester office found the boys eligible and that the Shrewsbury office did not, both acting under the same regulations. It has also been brought to our attention that several other hearings officers approved benefits for children placed in residential schools by the department under circumstances virtually identical to this case. Moreover, State Letter 468, dated July 6, 1978, amended the Massachusetts Assistance Payments Manual[8] to plug the apparent gap in prior regulations as to this type of benefit. That revision changed the definition of a dependent child to exclude a child who has been placed in family foster care or a group care facility by a department of the Commonwealth.[9] This change suggests that prior to 1978 no clearly defined policy existed within the department to evaluate applications of this type.

We conclude, therefore, that Richard and Gary were actually and legally within the day-to-day physical care and custody of their mother whenever they returned home, that they were needy dependent children entitled

---

[8]The Massachusetts Assistance Payments Manual now appears at 4 Code Mass. Regs. Title 106, §§ 300-358 (1978). The provision referred to here appears at 115 Mass. Reg. 155 (1978) but has not yet been incorporated into the code.

[9]We express no opinion concerning the validity or the scope of these amendments since they have no direct application to the time period here and they are not otherwise implicated in this litigation.

to the benefits otherwise available to them under the AFDC program, and that the plaintiff is entitled to benefits on a prorated basis for reasonable expenses incurred on their behalf for the period of their schooling.[10] The department's determination to the contrary is based upon a misconstruction of applicable regulations, and is, as a result, flawed by an error of law. Overall, we see the result as flowing not only from the governing regulations but also as being required by one of the principal congressional goals for this form of assistance, namely, "enabling each State to furnish financial assistance ... to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life. . . ." 42 U.S.C. § 601 (1976). Thus, the balance we strike recognizes that the financial obligations of the State and of the mother are compatible and also recognizes that the interests of the children are best served by the maintenance of a stable and continuous family environment. See G. L. c. 119, § 1; *Stanley* v. *Illinois,* 405 U.S. 645, 651 (1972).

3. *Disposition.* In these circumstances it is appropriate to remand this case to the Superior Court with the direction that it be remanded to the department. The department upon remand is to determine the amount of retroactive benefits due to the plaintiff which will account for the family's fixed monthly costs and for the expenses attributable to the children's home visits during the period of their entitlement. In making this computation, the department's financial contributions may also be considered and weighed. The department shall report its supplementary decision to the Superior Court, which shall retain jurisdiction and, after appropriate further proceedings, enter a new judgment, in accordance with

---

[10] Neither party has raised any question as to an award of retroactive benefits on these facts. Also, neither party has raised any question as to the proration of benefits as requested, and we do not raise it sua sponte.

the entire administrative record, awarding the past due unpaid benefits.[11]

Accordingly, the judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

BROWN, J. (concurring). I am in full agreement with the majority opinion and add these remarks only to augment the views expressed therein. If the Commonwealth's position were to be adopted by this court, not only would it be inconsistent with the statutory scheme, but it would create a perverse result because, instead of strengthening the familial relationships, it would tend to drive certain family members apart — a phenomenon which our present society can ill afford to foster.

_____

[11] The evidence indicates that Gary graduated in June, 1976. The plaintiff represents in her brief that Richard ceased attendance at the residential school in June, 1977. The retroactive benefits should be calculated within these time periods.