CECILE TESSON vs. COMMISSIONER OF TRANSITIONAL
ASSISTANCE.[1]

No. 95-P-1362.

Worcester. April 9, 1996. - October 10, 1996.

Present: PERRETTA, KASS, & JACOBS, JJ.

*Aid to Families with Dependent Children. Public Welfare,* Sufficiency of
claim for relief. *Administrative Law,* Regulations. *Regulation. Trust,* Ir-
revocable trust. *Words,* "Inaccessible asset."

The Department of Transitional Assistance (formerly known as the Depart-
ment of Public Welfare) improperly terminated payments of benefits to
a single-parent family under the Aid to Families with Dependent Chil-
dren and Emergency Aid to the Elderly, Disabled and Children
programs on the basis that an irrevocable trust for the benefit of one of
the minor children was not an "inaccessible asset" within the meaning
of 106 Code Mass. Regs. § 304.125(A), where the trustee parent, who
had sought court approval of the settlement and the terms of the trust,
was in literal compliance with the plain terms of the regulation. [482-
484]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 20, 1994.

The case was heard by *James P. Donohue,* J., on a motion
for summary judgment.

*Lee M. Berger* for the plaintiff.

*Koren L. Christensen,* Assistant Attorney General, for the
Commissioner of Transitional Assistance.

PERRETTA, J. In 1983, one of Tesson's minor children
(Adam) was seriously injured in an accident for which, in
1988, he received a substantial settlement in the way of a
lump sum payment and an annuity. Tesson placed the lump
sum payment in an irrevocable trust of which she is the
trustee. A short time thereafter, the Department of Transi-

---

[1]The department was formerly known as the Department of Public
Welfare.

tional Assistance (department) terminated payment of Tesson's benefits under the Aid to Families with Dependent Children (AFDC) and Emergency Aid to the Elderly, Disabled and Children (EAEDC) programs. In 1993, Tesson reapplied for benefits for herself and her family, but the department denied her application on the basis that Adam's trust was not "an inaccessible asset" as defined in 106 Code Mass. Regs. § 304.125(A) (1993).[2] On Tesson's appeal pursuant to G. L. c. 30A, § 14, a Superior Court judge allowed the department's motion for summary judgment. We conclude that the trust satisfies the conditions of the department's regulations and that it does not affect her and her family's eligibility for benefits. We reverse the judgment.

1. *The regulation.* In denying Tesson's application for AFDC benefits, the department relied upon 106 Code Mass. Regs. § 304.125(A) which reads, in relevant part:

> "An inaccessible asset is an asset to which the individual has no ready access and is not counted when determining eligibility for AFDC.
>
> > (1) Inaccessible assets include . . . irrevocable trust funds.
> >
> > (2) Any funds in a trust, and the income produced by that trust to the extent it is not available to the assistance unit, shall be considered inaccessible to the assistance unit if all of the conditions listed below are met by the trust arrangement.
> >
> > > (a) No assistance unit member has the power to revoke the trust arrangement or change the name of the beneficiary.
> > >
> > > (b) The trustee administering the trust is either:
> > >
> > > > (1) a court or an institution, corporation, or organization that is not under the direction or ownership of any assistance unit member; or

---

[2]EAEDC benefits were denied on the basis of 106 Code Mass. Regs. § 321.125(A) (1992), which is identical to § 304.125(A). References in this opinion to AFDC benefits and § 304.125(A) are to be read as including EAEDC and § 321.125(A).

(2) an individual appointed by the court who has court imposed limitations placed on his or her use of the funds; or

(3) an individual whose responsibilities are governed by the terms of the irrevocable trust and who is not under the direction or control of any assistance unit member(s)."[3]

2. *The evidence.* There was evidence to show that when Tesson's son Adam was seven years old, he suffered an injury to his brain stem in a swimming pool accident. Tesson was appointed his guardian by a Probate Court judge on October 29, 1987. Thereafter, on January 26, 1988, Tesson became the trustee of a trust established for the benefit of Adam. As recognized in the declaration of trust, Adam "has sustained serious and permanent damage to his ability to furnish self support when he attains the age of majority, and this Trust is intended to assure that resources will be available to substitute for his inability to furnish self support as an adult."

The declaration also acknowledges that the trust was "designed to comply with provisions of Chapter 106 of the Code of Massachusetts Regulations, section 304.125"[4] and further states that "any provisions of this trust which are inconsistent with the aforementioned provisions of the Code of Massachusetts shall be deemed to be invalid and unenforceable." Although the trust instrument gives Tesson, as trustee, broad discretion in administering the trust res, it gives her no authority to expend funds for any purpose other than Adam's present and future care and support.

---

[3]As provided in 106 Code Mass. Regs. § 301.600 (1987), the "assistance unit is composed of those persons whose needs are considered in determining eligibility and the amount of the grant, and who are eligible to receive benefits . . . ." In 1988, Tesson, seven of her ten children, her husband, and one granddaughter were receiving AFDC and EAEDC benefits. Benefits were not sought for Adam. Compare *Cohen* v. *Commissioner of the Div. of Medical Assistance,* 423 Mass. 399 (1996), a case involving "self-settled" trusts designed to allow beneficiaries to preserve their assets while also receiving public funds for medical expenses.

[4]By way of example, Article Five B of the trust reads, in part: "The Trustee may utilize trust assets for the acquisition of assets, goods and services which are deemed to be non-countable assets, as defined by Chapter 106 of the Code of Massachusetts Regulations, section 304.140, as from time to time amended . . . ."

After the trust was created, Tesson brought a motion in the Superior Court seeking approval of the settlement of Adam's tort case. A copy of her appointment as guardian and of the declaration of trust were attached to the motion. That motion was endorsed on February 5, 1988, by a Superior Court judge, "After hearing, settlement approved."

3. *Discussion.* "The purpose of the AFDC program is to enable children, one or both of whose parents are absent or unable to provide support, to continue living at home through the provision of funds for their shelter, food, and other necessary items." *Civetti* v. *Commissioner of Pub. Welfare,* 392 Mass. 474, 477 (1984). To qualify for benefits, a child must be found financially eligible under the department's regulations. See 106 Code Mass. Regs. § 304.010 (1987). The department's determination, that Tesson did not meet the eligibility requirement for benefits, was based upon its ruling that Adam's funds were not inaccessible to her since she was not, as required by 106 Code Mass. Regs. § 304.125(A)(2)(b)(2), "an individual appointed by the court who has court imposed limitations placed on . . . her use of the funds."

A regulation is to be read in the same manner as a statute. See *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 769 (1980). Because the regulation is unambiguous, the following rules apply: "We must construe the statute as it is written. *City Council of Peabody* v. *Board of Appeals of Peabody,* 360 Mass. 867, 867 (1971). A statute's words must be accorded their plain and ordinary meaning, 'considered in connection with the cause of its enactment, the preexisting state of the law, the mischief to be remedied and the main object to be accomplished.' *A. Belanger & Sons* v. *Joseph M. Concannon Corp.,* 333 Mass. 22, 25 (1955), quoting *Brown* v. *Robinson,* 275 Mass. 55, 57 (1931). The language of a statute is not to be enlarged or limited by construction unless its object and plain meaning require it. *Johnson's Case,* 318 Mass. 741, 747 (1945)." *Rambert* v. *Commonwealth,* 389 Mass. 771, 773 (1983). The evidence shows that Tesson was in literal compliance with the plain terms of the regulation.

Section 304.125 (A)(2)(b)(2) contains no directive or suggestion as to the manner or means by which its conditions are to be met. Such silence can be troublesome in respect to inter vivos trusts, which "may and frequently do run their entire

course without getting into court for any purpose." 2 New-hall, Settlement of Estates § 402, at 587 (4th ed. 1958). None-theless, in preparation of settlement of Adam's tort action, Tesson sought a judicial appointment to manage the antici-pated funds. Although Tesson may not be a court-appointed trustee of the Adam L. Richardson Trust, she was appointed by the court to administer Adam's estate when she was ap-pointed as his guardian. See G. L. c. 201, § 38. A guardian who becomes incapable of or unsuitable for "performing his trust," G. L. c. 201, § 33, as appearing in St. 1950, c. 420, is subject to removal.

Pursuant to the obligations of her appointment, Tesson next agreed to the settlement of Adam's tort action, see G. L. c. 201, § 37, with the proceeds earmarked for the trust. As earlier noted, the trust instrument imposed limitations, all consistent with the provisions of the department's applicable regulations, upon the trustee's use of the funds. Even though not required to do so, Tesson thereafter presented the trust instrument to the Superior Court judge, seeking and obtain-ing his approval of the settlement arrangements made on Adam's behalf.

We think it reasonable to infer that had the Superior Court judge been less than satisfied with the protection provided Adam by the amount of the settlement, or the provisions of the declaration of the trust which limited use of the funds to Adam's care and support, or the service of his court-appointed guardian as trustee, he would not have put his endorsement on the settlement. Such an endorsement was certainly not required as matter of law for settlement of the action.

Whatever significance ordinarily attaches to judicial ap-proval of a settlement, we think that in the circumstances of this case, which were all made known to the Superior Court judge in the motion for approval of the settlement and at-tached documents, approval of the terms of the trust was inherent in the approval of the settlement. The department's argument that judicial approval of the settlement was of no more consequence than court approval of a testamentary trust does not take into account that the settlement approval was partly based upon Tesson's position as Adam's guardian, which, as matter of law, imposed limitations upon her use of Adam's funds in addition to those imposed under the declara-tion of trust.

Notwithstanding that there can be no dispute that limitations were imposed upon Tesson's use of the trust funds under both the trust instrument and her appointment as guardian, the department points to three facts as constituting substantial evidence of Tesson's failure to meet the conditions of the regulation: the trust instrument does not require the trustee to file accountings with the Probate Court, the trust instrument allows the trustee to designate the successor trustee, and Tesson has in fact used the funds for the support of Adam's siblings. These facts are beside the point for the following reasons.

There is no requirement in the regulation that accountings be filed in the Probate Court in order that an irrevocable trust qualify as an "inaccessible asset." That a successor trustee might not meet the conditions of the regulation in the future may well be grounds to terminate benefits at that time. It does not, however, justify a determination of accessibility at a time when the trust is in fact being administered by "an individual appointed by the court." Finally, although Tesson relied upon Adam's annuity payments to support her children, she did so only after the department terminated her benefits because of the trust. That act may have constituted a possible basis for terminating benefits were they being paid. It did not, however, render an otherwise qualifying trust an accessible asset. Cf. *McCarthy* v. *Commissioner of Pub. Welfare*, 8 Mass. App. Ct. 600, 606 (1979), quoting *Pomeroy* v. *Department of Pub. Welfare*, 3 Mass. App. Ct. 177, 183 (1975) (Goodman, J., dissenting).

4. *Disposition.* It is appropriate in the circumstances of this case to remand this matter to the Superior Court with the direction that it be remanded to the department. Upon remand, the department is to determine the amount of retroactive benefits due to Tesson on the basis of her 1993 applications.[5] The department shall report its decision to the Superior Court, which shall retain jurisdiction and, after further ap-

---

[5]We do not agree with Tesson's assertion that she is entitled to benefits retroactive to 1988. When the department terminated her benefits in 1988, she took no appeal. Her present attempt to avoid the consequences of that failure and challenge the termination on the basis of a purported claim of underpayment, even if properly raised, is defeated by the language and intent of 106 Code Mass. Regs. § 306.200 (1992). That regulation provides: "An underpayment exists when: (A) a financial assistance payment received by or for an assistance unit for the Payment Month is less than the amount

propriate proceedings, enter a new judgment awarding past due benefits in an amount determined by the department consistent with this opinion.

*So ordered.*

for which the assistance unit was eligible; or (B) the Department fails to issue a financial assistance payment for the Payment Month to an eligible assistance unit, if such payment should have been issued." Tesson did not receive any payments, nor should any payments have issued, because of the determination of her ineligibility. Tesson's remedy was to appeal that determination.