KATHLEEN CIVETTI *vs.* COMMISSIONER OF PUBLIC WELFARE
(and five companion cases[1]).

Suffolk. March 5, 1984. — July 12, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Public Welfare. Aid to Families with Dependent Children. Administrative Law,* Regulations. *Minor,* Care and protection, Custody. *Words,* "Living with," "Court committed."

Under regulations of the Department of Public Welfare in effect from August 1, 1978, through August 18, 1983, a parent who entered into a voluntary agreement with the department providing for placement of her children in a residential school, from which the children were permitted to return to the parent's home for substantial periods of time, remained eligible for payments under the Aid to Families with Dependent Children (AFDC) program. [483-488]

Under regulations of the Department of Public Welfare in effect from August 1, 1978, to May 31, 1980, a parent whose children were placed in a residential school following a transfer of temporary custody to the department pursuant to a District Court order remained eligible for payments under the Aid to Families with Dependent Children (AFDC) program. [489-492]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1981.

The case was heard by *Mitchell,* J.

CIVIL ACTIONS commenced in the Superior Court Department on January 31, 1979, April 10, 1979, December 12, 1979, January 31, 1980, and May 7, 1980.

The cases were heard by *Garrity,* J., on a master's report.

---

[1] Sandra Brunetta *vs.* Commissioner of Public Welfare, Jeanne Dever *vs.* Commissioner of Public Welfare, Antonetta Repici *vs.* Commissioner of Public Welfare, Claire Cooper *vs.* Commissioner of Public Welfare, and Patricia Furtado *vs.* Commissioner of Public Welfare.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*William L. Pardee,* Assistant Attorney General, for Commissioner of Public Welfare.

*Mark Spiegel* for Kathleen Civetti.

*Ilene Seidman* for Jeanne Dever & another.

*Suzanne Harris* for Patricia Furtado.

*Nancy Borofsky* for Claire Cooper & *John J. Finn* for Sandra Brunetta, joined in a brief, for Claire Cooper & others.

ABRAMS, J. The plaintiffs in the six cases we review are five women who entered into voluntary agreements with the Department of Public Welfare (DPW) pursuant to which their children were placed in residential schools, and one woman whose children attended a residential school while in the DPW's temporary custody pending adjudication of a petition for care and protection. Each plaintiff brought an action in the Superior Court seeking judicial review of the decisions of the DPW terminating payments to them on behalf of their children under the Aid to Families with Dependent Children program (AFDC). G. L. c. 118. See 42 U.S.C. §§ 601-610 (1967 & Supp. V 1981). The plaintiffs also sought declaratory relief. G. L. c. 231A. Five of the cases were consolidated before one Superior Court judge; the sixth case was litigated before another Superior Court judge. Relying on *McCarthy* v. *Commissioner of Pub. Welfare,* 8 Mass. App. Ct. 600 (1979), the judges entered judgments that these plaintiffs were entitled to benefits on a prorated basis. We transferred the cases to this court on our own motion.[2]

We conclude that, under DPW regulations in effect from August 1, 1978, through August 18, 1983, the plaintiffs whose children were voluntarily placed in residential schools remained eligible to receive AFDC benefits for those children, and that such payments should not be prorated. We also hold that, under

[2] The Commissioner appeals from the judgments setting aside the DPW's decisions and remanding the cases to the DPW for payment of retroactive benefits. The plaintiffs cross-appeal from those portions of the judgments setting the manner in which the benefits are to be calculated.

DPW regulations in effect from August 1, 1978, through May 31, 1980, the plaintiff whose children were transferred to the DPW's temporary custody remained eligible for unprorated benefits. We remand the cases to the Superior Court for the entry of declaratory judgments consistent with our opinion and for further remand to the DPW, which is to calculate the allowable benefits according to the principles generally applicable to eligible recipients.

We describe initially the statutory and regulatory landscape in which these cases are situated. The Massachusetts AFDC program, administered in the Commonwealth by the DPW, provides semi-monthly payments to a parent or other qualifying relative of financially eligible "dependent" children "to enable such parent to bring up such child or children properly in his or her own home." G. L. c. 118, § 2, as amended through St. 1983, c. 633, § 5. A "dependent" child is defined as "a needy child who has been deprived of parental support or care . . . and who is living with his father, mother or other parent in a place of residence maintained by one or more of such relatives as his or their own home . . . ." G. L. c. 118, § 1, as amended through St. 1982, c. 424, § 1. 42 U.S.C. § 606(a) (Supp. V 1981). A State that adopts a State plan consistent with Federal AFDC requirements qualifies for Federal participation[3] in payments made on behalf of children meeting the Federal definition of "dependent" children.[4] 42 U.S.C. §§ 603(a), 606(a) (1976 & Supp. V 1981).

---

[3] The Federal government reimburses the Commonwealth for approximately fifty per cent of payments made to AFDC recipients in compliance with Federal requirements. See *ABCD, Inc.* v. *Commissioner of Pub. Welfare,* 378 Mass. 327, 331 (1979).

[4] To obtain AFDC benefits, a child must be both "categorically" eligible and "financially" eligible. A child is categorically eligible if he or she falls within the definition of a "dependent" child. A State receiving Federal financial participation may not adopt a standard of categorical eligibility narrower than the Federal definition. *Townsend* v. *Swank,* 404 U.S. 282, 286 (1971). A categorically eligible child must also meet financial eligibility standards by qualifying as "needy." States have considerable discretion in setting standards of need as well as the level of benefits to be paid to those who meet those standards. See, e.g., *Rosado* v. *Wyman,* 397 U.S. 397, 408 (1970); *King* v. *Smith,* 392 U.S. 309, 318-319 (1968). Because the

The purpose of the AFDC program is to enable children, one or both of whose parents are absent or unable to provide support, to continue living at home through the provision of funds for their shelter, food, and other necessary items. Under the applicable Federal regulation, a child is deemed to be living at "home" if there is evidence of "assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living." 45 C.F.R. § 233.90(c)(1)(v) (B) (1983). 106 Code Mass. Regs. § 303.200 (1980). It is clear from the regulations, however, that a parent may retain "responsibility for day to day care of the child" even though the child is not continuously at home. "A home exists so long as the relative exercises responsibility for the care and control of the child, even though . . . the child . . . is temporarily absent from the customary family setting." 45 C.F.R. § 233.90 (c)(1)(v)(B)(1983).[5] 106 Code Mass. Regs. § 303.230(A) (1980).

The question common to the cases before us is whether a child who maintains a close relationship with a parent and who returns to the parent's home for substantial periods of time while placed in a residential school or while in an agency's temporary legal custody is "temporarily absent" from the home, but still "living with" the parent and therefore eligible for AFDC payments to the parent, or is no longer "living with" the parent and therefore ineligible for such benefits. The applicable Federal regulation provides no guidance as to how long an

---

DPW concluded that the plaintiffs' children were not categorically eligible for AFDC benefits, it did not reach the question of financial eligibility, and no issues concerning financial eligibility are raised on these appeals.

[5] The full text of 45 C.F.R. § 233.90(c)(1)(v)(B)(1983) states: "A home is the family setting maintained or in process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. A home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary family setting. Within this interpretation, the child is considered to be 'living with' his relative even though:

"(1) He is under the jurisdiction of the court (e.g., receiving probation services or protective supervision); or

"(2) Legal custody is held by an agency that does not have physical possession of the child."

absence may be considered "temporary," or as to whether the cause of the absence has any bearing on the child's eligibility. The DPW, however, has promulgated a regulation, codified at 106 Code Mass. Regs. § 303.230(A) (1980),[6] stating that "[t]he child is not considered to be living with the relative *if the child has been voluntarily surrendered or court committed into the care and custody* of a[n] . . . agency that has physical possession [of] the child, unless the child returns to the home of the relative for a period of more than 30 consecutive days" (emphasis supplied).[7] The DPW contends that the regulation

----

[6] The regulation codified at 106 Code Mass. Regs. § 303.230(A) (1980) was preceded by similar, but not identical, regulations codified at 6 Code Human Services Regs. §§ 300.18, 301.03, 304.202 (1978). Those regulations were in effect at the time the DPW denied benefits to some of these plaintiffs. The Superior Court judge, however, treated 106 Code Mass. Regs. § 303.230(A) (1980) as the applicable regulation, and all parties focus their arguments on the later regulation on appeal. Although there are semantic differences between the earlier and later regulations, the result in the cases involving voluntary placements is not affected by which regulations applied, because the phrase at issue in these cases ("voluntarily surrendered . . . into the . . . care and custody [of the department]") appears in both sets of regulations. See 6 Code Human Services Regs. §§ 300.18, 304.202 (1978). For purposes of convenience, we direct our discussion in the text concerning the voluntarily placed children to 106 Code Mass. Regs. § 303.230(A) (1980), in effect through August 18, 1983, but our analysis should be understood as applying equally to the earlier regulations. Thus, our decision today controls the AFDC-eligibility of children placed in residential schools by voluntary agreement during the time period from August 1, 1978, to August 18, 1983. Because (although we do not decide the question) the result in the Furtado case, involving children transferred to the DPW's temporary custody whose AFDC eligibility was terminated pursuant to the earlier regulations, may differ under 106 Code Mass. Regs. § 303.230(A) (1978), we focus our analysis in that case on the earlier regulations. Our decision therefore addresses the AFDC-eligibility of children in the DPW's temporary custody during the period extending from August 1, 1978, until May 31, 1980.

[7] 106 Code Mass. Regs. § 303.230(A) (1978), in effect through August, 1983, read, in pertinent part: "The child and the relative are considered to be living together in the home even though either the child or the relative is temporarily absent from the home. Absences may include attendance at educational institutions or specialized schools, hospitalization, employment, visits, and similar situations of a temporary nature.

"The child is considered to be living with the relative even if the child is under the jurisdiction of the court (for example, receiving probation

precludes payment to a parent of AFDC benefits on behalf of a child placed by an agency in a residential school through voluntary agreement or removed from the parent by temporary emergency order.[8] The plaintiffs contest the applicability, or, in the alternative, the validity, of the DPW regulation in the circumstances of their cases.

1. *Factual Background.*[9]

A. *Kathleen Civetti vs. Commissioner of Public Welfare.* Prior to March, 1980, the plaintiff received AFDC benefits on behalf of a son and a daughter. On March 7, 1980, after school officials recommended that the son be placed in a residential school to facilitate resolution of his educational and behavioral problems, the plaintiff entered into a voluntary agreement with the DPW under G. L. c. 119, § 23 (A),[10] pursuant to which the child was placed in a private, nonprofit residential school

---

services or protective supervision), or legal custody is held by an agency that does not have physical possession of the child.

"The child is not considered to be living with the relative if the child has been voluntarily surrendered or court committed into the care and custody of a public or licensed private agency that has physical possession [of] the child, unless the child returns to the home of the relative for a period of more than 30 consecutive days."

[8] The Commissioner represents that Federal funding has not been requested for the residential placements, but that such funding may be available under one of several Federal programs for "at least some past placements, as well as for future placements."

[9] The facts we describe are undisputed and are taken from findings by the Superior Court judges as well as from the records in the DPW proceedings.

[10] General Laws c. 119, § 23, as amended through St. 1983, c. 633, § 7, provides: "The department shall have the responsibility, including financial responsibility, for providing foster care for children through its own resources or by use of appropriate voluntary agencies according to the rules and regulations of the department in the following instances:

"A. Upon the application of a parent or guardian or any person acting in behalf of the child, or of the child himself, the department may accept for foster care any child under eighteen years who in its judgment is in need of foster care. Such acceptance shall entail no abrogation of parental rights or responsibilities, but the department may accept from parents a temporary delegation of certain rights and responsibilities necessary to provide the foster care for a period of time under conditions agreed upon by both and terminable by either."

in Scituate. Under the agreement, the plaintiff delegated to the DPW the right to determine where the child would live, the right to make educational decisions, the right to authorize routine and emergency medical care, and the authority to sub-delegate these rights to the school. The agreement provided that the plaintiff or the DPW could terminate the arrangement with ten days' notice. On January 27, 1982, the plaintiff entered into a similar agreement with the Department of Social Services (DSS), which in the interim had assumed responsibility for residential placements.[11] Under the latter agreement, the plain-tiff delegated to the DSS only the right to authorize routine and emergency medical treatment and to subdelegate that right.

Pursuant to the two agreements, the child attended residential school until June, 1982.[12] During this period, he returned home on alternate weekends, during school vacations, and during periods of illness, and was thus at home for over one-third of a calendar year. The plaintiff maintained one room of her apartment specifically for her son's use on his home visits. Although the DPW and the DSS were financially responsible for the child's expenses at school, the plaintiff incurred unreim-bursed expenses in connection with his food and clothing re-quirements and transportation costs.[13] In addition, under the placement agreement, the plaintiff actively participated in de-cisions concerning her son's day-to-day care while at school.

On February 18, 1981, the DPW notified the plaintiff that her AFDC benefits would be reduced from $379.20 to $314.20 a month because her son was no longer categorically eligible under 106 Code Mass. Regs. § 303.230(A) (1978). The plaintiff sought judicial review under G. L. c. 30A, § 14, of a decision

---

[11] Responsibility for residential placements was transferred from the DPW to the DSS. G. L. c. 18B.

[12] The agreement with the DPW expired on March 6, 1981. No written agreement was in effect between that date and January 27, 1982, when the agreement with the DSS was signed.

[13] On the view we take of the case, we need not address the DPW's contention that the plaintiff had the right (of which she was apparently unaware) to obtain reimbursement for her son's clothing expenses as well as food vouchers for the days he spent at home. See note 20, infra.

of a DPW appeals referee upholding the benefit reduction. On September 20, 1982, a Superior Court judge ruled the DPW regulations inapplicable to the plaintiff and set aside the referee's decision.

B. *The Brunetta, Dever, Repici, and Cooper Cases.* Requests for judicial review under G. L. c. 30A, § 14, of the DPW decisions in these four cases were consolidated, along with the Furtado case (discussed below), in one action before the Superior Court. All four plaintiffs suffered reduction or elimination of AFDC benefits pursuant to 106 Code Mass. Regs. § 303.230(A) (1978) on behalf of children placed in residential schools under voluntary agreements.[14] As in the Civetti case, the plaintiffs' children visited the plaintiffs on weekends, holidays, and school vacations, and spent a substantial proportion of the year at home. In addition to paying their school and transportation expenses, the DPW provided the children with monthly clothing and personal allowances. These sums, however, were insufficient to meet the children's needs while at home, and the plaintiffs incurred expenses in connection with rent for extra bedrooms, food, entertainment, and other incidental expenditures for their children.

In reviewing the benefit denials, the Superior Court judge assumed, without discussing, that 106 Code Mass. Regs. § 303.230(A) (1978) rendered the plaintiffs categorically ineligible for AFDC payments on behalf of the voluntarily placed children. The judge ruled, however, that, as applied to these plaintiffs, the DPW regulation conflicted impermissibly with Federal and State statutory law and violated the plaintiffs' due process and equal protection rights. The judge ordered that the plaintiffs be awarded retroactive benefits.

C. *Patricia Furtado vs. Commissioner of Public Welfare.* Prior to July, 1979, the plaintiff's four children attended a residential school in Vermont at the expense of the plaintiff with some financial assistance from the school. In July, 1979,

---

[14] Sandra Brunetta's son was placed in a residential school in Rutland; Jeanne Dever's daughter attended a residential school in Arlington; Antonetta Repici's son was placed in a youth center in Tilton, New Hampshire; Claire Cooper's son attended a residential school in Scituate.

the DPW commenced a care and protection proceeding in a District Court under G. L. c. 119, § 24, to transfer custody of the children to the DPW on the grounds that the alcoholism and abusive behavior of the plaintiff's second husband were detrimental to their well-being. On July 24, 1979, a District Court judge entered a temporary order granting custody to the DPW. On July 25, 1979, the plaintiff, who had been receiving AFDC benefits on behalf of the four children, was notified that these benefits were being terminated because the children had been "court committed" into the DPW's "care and custody" and were therefore no longer "living with" the plaintiff under 6 Code Human Services Regs. §§ 300.18 and 301.03 (1978), regulations that preceded 106 Code Mass. Regs. § 303.230(A) (1980). See note 6, *supra.*

During the pendency of the temporary order,[15] the children visited the plaintiff on vacations and holidays but were not permitted to stay in the plaintiff's home overnight, remaining instead with their father. Although the DPW assumed school expenses, the plaintiff paid, in connection with the children's visits, expenses relating to food, clothing, entertainment, school books and transportation.

In the G. L. c. 30A, § 14, action for judicial review of the DPW decision to terminate the plaintiff's AFDC benefits, the Superior Court judge treated the case in conjunction with the voluntary placement cases with which it had been consolidated. After the commissioner filed an appeal from the judgment that the DPW regulation as applied to the consolidated cases was invalid, the Appeals Court decided, in a case presenting facts virtually identical to the Furtado case, that 106 Code Mass. Regs. § 303.230(A) (1980) was inapplicable to a child placed in the custody of the DSS pursuant to an original or extended temporary emergency order under G. L. c. 119, § 24. *Morin* v. *Com-*

---

[15] The record does not disclose the eventual disposition of the care and protection petition. See G. L. c. 119, § 26. The District Court judge apparently conditioned return of the children to the plaintiff's custody on the plaintiff's separating from her second husband and obtaining an apartment for herself and her children. During the pendency of the temporary order, the plaintiff initiated divorce proceedings.

*missioner of Pub. Welfare,* 16 Mass. App. Ct. 20 (1983). The Commissioner subsequently moved to dismiss the Furtado appeal, but, after the plaintiff decided to cross-appeal on the issue of relief, opted to preserve the appeal, and now argues that the Morin decision should be overruled or distinguished.

2. *Effect of Voluntary Residential Placement on AFDC Eligibility.*

The Superior Court judges treated the Appeals Court's decision in *McCarthy* v. *Commissioner of Pub. Welfare,* 8 Mass. App. Ct. 600 (1979), as controlling the AFDC eligibility of these plaintiffs. That decision held that a parent may remain eligible for prorated AFDC benefits on behalf of a child voluntarily placed with an agency for residential schooling. The plaintiff in *McCarthy* was denied benefits on behalf of her voluntarily placed children at a time when the DPW had no consistent policy on AFDC eligibility in such circumstances and had not yet implemented the regulations on which it relies in these cases. *Id.* at 607-608. As in the cases before us, the McCarthy children visited their mother's apartment frequently during the school year; the mother maintained an extra bedroom in her apartment to accommodate them on their visits home; and the mother incurred unreimbursed expenses for food, transportation, telephone calls, and sundries in connection with the children's visits. *Id.* at 601-602.

The Appeals Court rejected the contention that a parent's voluntary agreement to place a child with the DPW for residential schooling by itself removed the child from the category of "dependent" children. The court noted that the voluntarily placed children returned home more frequently than other children not placed with the DPW or DSS, who attend residential schools under special education programs financed by local school committees and whose AFDC eligibility is uncontroverted.[16] The court also observed that the children required food, a bedroom, and other services while at home. *Id.* at 605. Moreover, the court stated that "although the department had

[16] See G. L. c. 71B, § 5. See also 42 U.S.C. § 606(a)(2)(B) (Supp. V 1981). The DPW concedes that it continues to treat as categorically eligible children placed in residential schools "for purely educational reasons."

placed [the children] with the schools and paid their yearly tuition, it was their mother, and not the department, who was consulted about their day-to-day care by the school staffs." *Id.* at 607. The Appeals Court concluded, however, that the children in that case "were actually and legally within the day-to-day physical care and custody of their mother *whenever they returned home*," and that the mother was "entitled to [AFDC] benefits *on a prorated basis* for reasonable expenses incurred on their behalf for the period of their schooling" (emphasis added). *Id.* at 608-609. Emphasizing that the termination of AFDC benefits in the case before it was not required by DPW regulation and did not conform to consistent DPW policy, the Appeals Court held the DPW's decision that the children were ineligible for any AFDC benefits contravened the policy, manifested in Federal and State statutes and regulations, of making the maintenance of a family environment for children financially feasible. *Id.* at 609.

The *McCarthy* court's conclusion that voluntarily placed children remain intermittently eligible for AFDC benefits, and that such benefits should be dispensed on a prorated basis, has pragmatic appeal, for it is evident that parents of such children shoulder a financial burden in connection with the maintenance of a home environment to which the children can return from school, but that that financial need is somewhat diminished relative to the need of parents whose children reside at home on a full-time basis. Nonetheless, all parties are in agreement that neither intermittent eligibility nor proration of benefits is an available option under the AFDC program, and our reading of the pertinent statutes and regulations persuades us that they are correct in that assessment.[17] Thus, the practical solution

[17] See 42 U.S.C. § 602(a)(13) (Supp. V 1981) (AFDC eligibility determined on monthly basis). See also 42 U.S.C. § 602(a)(17) (Supp. V 1981); 45 C.F.R. § 233.35(a) (1983); 47 Fed. Reg. 5664-5667 (1982). Compare 7 C.F.R. § 273.10(f) (1984) (food stamps). Such inflexibility is perhaps necessary to avoid administrative burdens that would inhere in a system geared to a day-to-day allocation of benefits. See *Parks* v. *Harden,* 504 F.2d 861, 875 (5th Cir. 1974) (Ainsworth, J., dissenting), vacated and remanded, 421 U.S. 926 (1975).

reached by the *McCarthy* court is not to be followed,[18] and the question of the AFDC eligibility of these children is to be decided as "an all or nothing proposition." *Morin* v. *Commissioner of Pub. Welfare,* 16 Mass. App. Ct. 20, 27 n.11 (1983).

Relying on the principle that regulations of an administrative agency to which the responsibility of administering a statutory program has been delegated are entitled to deference and should be upheld unless manifestly inconsistent with the governing statutes, see *Rock* v. *Massachusetts Comm'n Against Discrimination,* 384 Mass. 198, 206-207 (1981), the DPW asserts that 106 Code Mass. Regs. § 303.230(A) (1983) rendered these voluntarily placed children ineligible for benefits and is dispositive. The plaintiffs counter that the regulation relied on by the DPW contravenes the Federal AFDC statute, as interpreted in 45 C.F.R. § 233.90(c)(1)(v)(B) (1983). We do not reach the question of the compatibility of the DPW regulation, if applicable, with Federal AFDC requirements, however, nor do we address the plaintiffs' constitutional arguments, for we are unable to agree with the DPW's threshold contention that § 303.230(A) excludes voluntarily placed children from the status of "dependent" children.

The first paragraph of § 303.230(A) contains a provision, analogous to that in 45 C.F.R. § 233.90(c)(1)(v)(B) (1983), stating that a child may be deemed to be living in the home of the parent even though the child is temporarily absent from the home. Section 303.230(A) further states that temporary absence "may include attendance at educational institutions or specialized schools." Read together with 106 Code Mass. Regs. § 303.200 (1980), which, like the Federal regulation, requires that a "dependent" child live with a relative responsible for the child's day-to-day care, § 303.230(A) clearly contemplates a situation in which a parent retains responsibility for the day-to-day care of a child attending school, and is consistent with the plaintiffs' assertions that they are not disqualified from receiving AFDC

---

[18] In *McCarthy* v. *Commissioner of Pub. Welfare, supra,* "[n]either party . . . raised any question as to the proration of benefits as requested, and [the Appeals Court did] not raise it sua sponte." *Id.* at 609 n.10.

payments for their children during these periods when the children are attending residential schools for educational and behavioral purposes. We do not agree with the DPW's claim that, because a State agency finances the children's expenses while at school, contemporaneous AFDC payments to their parents are duplicative. Although a child's placement in a residential school eliminates the parent's need to feed or house the child during portions of the year, the additional living space necessary to accommodate the child on visits home is a fixed cost unaffected by the fact that the child does not make constant use of that space.[19] Further, although DPW assistance may be available for other out-of-pocket expenses affiliated with the periods during which the child is at home,[20] the record supports the findings below that a significant proportion of such expenses would go uncompensated in the absence of AFDC benefits.

The practical reasons for continued AFDC eligibility of parents of voluntarily placed children are supported by policy considerations. Without AFDC benefits enabling parents to pay expenses connected with providing a home environment for voluntarily placed children, "indigent parent[s] would be well-advised not to have [their] children home . . . simply because of financial reasons, a result which would be inconsistent with the stated purposes of the AFDC program." *McCarthy* v. *Commissioner of Pub. Welfare, supra* at 606. Alternatively, a rule eliminating AFDC payments for voluntarily placed children might induce parents to forgo voluntary residential school placements that are in the best interests of children in order to avoid total separation from the children. In the absence of ex-

[19] For this reason, we disagree with the premise of the majority opinion in *Brunner* v. *Minnesota Dep't of Pub. Welfare,* 285 N.W.2d 74, 78 (Minn. 1979), on which the DPW relies, that termination of AFDC benefits on behalf of a child placed in a residential school is appropriate because the parent is not required to provide shelter on a daily basis.

[20] The DPW, upon request, will issue food vouchers at the rate of $1.80 a day to parents of "voluntarily surrendered or court committed" children who return home for thirty days or less. 106 Code Mass. Regs. § 305.500 (1980). Under the DPW's construction of 106 Code Mass. Regs. § 303.230 (A) (1983), the plaintiffs were eligible for such vouchers.

plicit language to the contrary, we do not impute to the DPW a rule producing these effects.

The DPW contends, however, that the language in the third paragraph of § 303.230(A) declaring ineligible children "voluntarily surrendered or court committed into the care and custody of a public or licensed private agency" clearly applies to voluntarily placed children. The plaintiffs contest the DPW's claim that these children were "voluntarily surrendered" into the "care and custody" of the DPW. We agree that these voluntarily placed children do not fall within the disqualification created by the third paragraph of § 303.230(A).

The phrase "voluntarily surrendered" must be read in the context of G. L. c. 119, § 23, the statute governing substitute care arrangements by the DPW or the DSS. That statute formerly charged the DPW, and currently charges the DSS, with the responsibility of providing substitute care in three situations relevant to our inquiry. Clause A authorizes voluntary placements pursuant to the application of a parent or other person representing a child. Clause B provides that "[t]he department may accept from parents voluntary surrender of custody of their children . . . for purposes of giving consent for adoption." Clause C requires the department to accept responsibility for children committed to the department's custody by court order. The DPW regulation declaring ineligible for AFDC benefits children "voluntarily surrendered or court committed into the [department's] care and custody" by its terms applies to the situations envisaged in G. L. c. 119, § 23 (B) and (C), not to a voluntary placement under § 23 (A).

We eschew a construction of 106 Code Mass. Regs. § 303.230(A) (1980) that would require us to presume the DPW ignored the language of G. L. c. 119, § 23, at the time it promulgated the regulation. Had the DPW intended to incorporate voluntary placements within the scope of the disqualification created by the regulation, it could have done so in unambiguous terms. We see no reason to accept the DPW's argument that the phrase "voluntary surrender" as used in the regulation should be read in a broader and more general sense than the cognate language in G. L. c. 119, § 23 (B). We note that other

statutory and regulatory provisions incorporating the term "voluntary surrender" use the phrase specifically in the context of parental relinquishment of children for purposes of giving consent to adoption. G. L. c. 210, § 2. Compare 110 Code Mass. Regs. § 5.11 (1981) ("voluntary placements" with the DSS) with 110 Code Mass. Regs. § 5.13 (1) (1981) ("voluntary surrenders").[21] Additionally, the DPW regulation refers to a "surrender" into the "custody" of the agency, language consistent with the transfer of legal custody (as defined in G. L. c. 119, § 21) involved in voluntary surrenders under G. L. c. 119, § 23 (B) (and in court commitments pursuant to G. L. c. 119, § 23 [C]), but inconsistent with G. L. c. 119, § 23 (A) voluntary placements, which, under regulations effective during the periods in which the children in these cases were declared AFDC-ineligible, do not entail a transfer of all the rights subsumed in legal custody. 106 Code Mass. Regs. § 276.320(A) (1979), superseded by 110 Code Mass. Regs. §§ 7.03(2), 7.05 (1980), superseded by 110 Code Mass. Regs. §§ 5.03(2), 5.11(7) (1981).

For the reasons we have discussed, we conclude that the plaintiffs qualified for AFDC payments under 106 Code Mass. Regs. § 303.230(A) as in effect at the time relevant to these actions.[22] The DPW erred, therefore, in invoking that regulation to deprive them of benefits.[23]

---

[21] Although usage of the term "voluntary surrender" in the DSS's regulations relating to substitute care arrangements does not control our interpretation of the term as used in the DPW regulation regarding AFDC eligibility, we consider the DSS regulations as evidence that "voluntary surrender" is a term of art referring to a parent's relinquishment of custody over a child in order to make the child available for adoption.

[22] We note that 106 Code Mass. Regs. § 303.230(A) third par., transmitted by State Letter 656, 378 Mass. Reg. 3-6 (Aug. 18, 1983), now contains an explicit reference to G. L. c. 119, § 23 (A), and characterizes ineligible children as being in the "care *or* custody" of the agency rather than in the agency's "care *and* custody" (emphasis supplied). The amended regulation is not before us, and we leave open the possibility that the result we reach would differ under that regulation.

[23] The record contains a letter to the Commissioner from the United States Department of Health and Human Services' assistant regional commissioner for family assistance interpreting 45 C.F.R. § 233.90(c)(1)(v)(B) (1983), as ren-

*3. Effect of Temporary Transfer of Custody on AFDC-Eligibility.*

We turn to the validity of the DPW's decision to terminate benefits for plaintiff Patricia Furtado's children following the entry of an emergency order under G. L. c. 119, § 24, transferring temporary legal custody of the children from the plaintiff to the DPW. The DPW argues that these children were "court committed" to its care and custody, and therefore no longer "living with" the plaintiff under 6 Code Human Services Regs. §§ 301.03 and 304.202 (1978). We agree with the plaintiff that her children were not "court committed" within the meaning of these regulations.

General Laws c. 119, § 24, as appearing in St. 1983, c. 182, authorizes the DPW or the DSS, when it appears that a child is not receiving adequate care and protection, to petition a competent Juvenile Court or juvenile session of a District Court for summonses to the child's parents "to show cause why the child should not be committed to the custody of the department or other appropriate order made." If, after trial on the merits, the court finds that the department has met its burden of proof[24]

dering children placed in residential schools pursuant to voluntary agreements ineligible for Federal AFDC payments, and stating that Federal financial participation would be unavailable for AFDC payments made by the DPW on behalf of such children. Following oral argument, the DPW also submitted a brief stating the same position filed by the Secretary of the United States Department of Health and Human Services in a suit currently pending in the United States District Court for the District of Massachusetts.

Even if, granting the United States Department of Health and Human Services' interpretations of its regulations the deference to which they are entitled, see *ABCD, Inc.* v. *Commissioner of Pub. Welfare,* 378 Mass. 327, 334 (1979), and cases cited, we assume that Federal reimbursement is not available in these cases, our conclusion that the plaintiffs remain eligible for State AFDC payments under the DPW regulation is unaffected. Although we would take into account the availability of Federal financial participation in construing an ambiguity in the DPW regulations governing AFDC eligibility, we cannot rewrite DPW regulations to ensure that the standard of categorical eligibility set forth therein is no broader than that for which Federal reimbursement is available. Where the DPW has promulgated an applicable regulation, it must act consistently with that regulation.

[24] The agency must establish parental unfitness by "clear and convincing" evidence. *Custody of a Minor,* 389 Mass. 755, 766-767 (1983), and cases cited.

with respect to the allegations in the petition, the court may "commit the child to the custody of the department until he becomes eighteen years of age or until in the opinion of the department the object of his commitment has been accomplished," or the court may make "any other appropriate order," including the "transfer [of] temporary legal custody" to the department. G. L. c. 119, § 26 (2) (*iii*), as amended through St. 1983, c. 117. During the interim between the filing of the petition and its adjudication, the court, if "satisfied that there is reasonable cause to believe that the child is suffering from . . . or is in immediate danger of serious abuse or neglect," may issue "an emergency order transferring custody of a child . . . to the department or to a licensed child care agency or individual described in [G. L. c. 119, § 26 (2)]." G. L. c. 119, § 24. An initial emergency order under § 24 may not transfer custody for more than seventy-two hours; however, after the child's parents, guardian, or custodian have been notified of the filing of the petition and given an opportunity to appear before the court, the court may continue the § 24 order until the § 26 adjudication.

In light of the clear distinction drawn by § 24 and § 26 between a long term *commitment* of a child to the agency's custody[25] and a temporary *transfer* of custody to the agency, we are unable to agree with the DPW that the plaintiff's children were "court committed" to the DPW within the meaning of the DPW's regulations while the § 24 emergency order was in effect.[26] This difference between a commitment and a trans-

---

[25] A commitment is often characterized as "permanent," although the parents retain the right to petition the court periodically for a return of custody. *Custody of a Minor* (*No. 2*), 378 Mass. 712, 718 n.2 (1979).

[26] The DPW argues that, in interpreting the scope of the phrase "court committed" under 6 Code Human Services Regs. §§ 301.03 and 304.202 (1978), we should rely on 106 Code Mass. Regs. § 276.010 (1979), a DPW regulation defining "commitment" as including a § 24 emergency transfer, instead of relying on the statutory usage of that term. However, at the time 6 Code Human Services Regs. §§ 301.03 and 304.202 (1978), became effective, 106 Code Mass. Regs. § 276.010 had not been promulgated. We

fer of custody is more than a technicality. Whereas a child committed to the agency's custody is usually removed from the parent's home on a long term, if not permanent, basis, and cannot, therefore, be considered "temporarily absent" from the home, an emergency transfer is by definition temporary and may well eventuate in a return of the child to the parent's home. The record in this case indicates that the plaintiff continued to sustain expenses on behalf of her children while they were in the DPW's temporary custody. Further, although the children were not permitted to sleep at the plaintiff's apartment, the judge who entered the § 24 order conditioned a return of the children to the plaintiff's custody on her obtaining a separate apartment for herself and her children. See note 15, *supra.* In such circumstances, it would be wholly antithetical to the objectives of the AFDC program to deprive the plaintiff of benefits intended in large part to keep families together by making the costs of sheltering children affordable. Our conclusion that the plaintiff's children remained AFDC-eligible under the applicable DPW regulations is also consistent with indications in the Federal AFDC regulation that the locus of legal

---

decline to construe the meaning of "commitment" in light of a subsequently promulgated regulation rather than the contemporaneously effective statutes.

A more difficult problem of construction is presented with regard to the applicability of 106 Code Mass. Regs. § 303.230(A) (1980), to children placed in the agency's custody under a § 24 order, because that regulation was promulgated subsequent to the promulgation of the DPW's regulatory definition of "commitment." Although the Appeals Court's decision in *Morin* v. *Commissioner of Pub. Welfare,* 16 Mass. App. Ct. 20 (1983), which involved 106 Code Mass. Regs. § 303.230(A) (1980), rather than the earlier regulations, did not consider the impact of the then effective DPW definition of "commitment," that omission does not necessarily undermine the result reached in *Morin* given the DPW's current position that 106 Code Mass. Regs. § 303.230(A) (1980), was simply a verbal reformulation of 6 Code Human Services Regs. §§ 301.03 and 304.202 (1978), and should not be read as effectuating substantive changes in AFDC eligibility. Because the Furtado case is controlled by the earlier regulations, we defer consideration of the result under 106 Code Mass. Regs. § 303.230(A) (1980), for a case where the issue is squarely before us. We likewise express no opinion on the AFDC eligibility under 106 Code Mass. Regs. § 303.230(A), as amended by State Letter 656 (1983), of children in the agency's custody pursuant to a § 24 order.

custody is not by itself determinative of eligibility. See 45 C.F.R. § 233.90(c)(1)(v)(B)(2) (1983).

We remand the cases to the Superior Court for the entry of judgments awarding appropriate declaratory relief and for remand to the DPW, which should calculate the retroactive benefits due the plaintiffs in light of our conclusion that their children remained categorically eligible during the contested time periods. The records before us disclose no bar to payment of AFDC benefits for the affected periods; on remand, however, evidence bearing on the children's financial eligibility or the existence of "countable income" to be deducted from the amounts due may be introduced and considered in the DPW's determinations.

*So ordered.*