KATHY JOHNSON *vs.* COMMISSIONER OF PUBLIC WELFARE.

Hampden. December 7, 1992. - March 11, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Aid to Families with Dependent Children. Administrative Law*, Regulations. *Minor*, Custody. *Words*, "Living with."

The Department of Public Welfare improperly terminated benefits under Aid to Families with Dependent Children (AFDC) received by a mother whose child had heen placed in the temporary custody of the Department of Social Services, where the mother established by substantial evidence her eligibility for AFDC benefits under the applicable regulation, 106 Code Mass. Regs. § 303.230 (A)(2)(b). [578-581]

CIVIL ACTION commenced in the Superior Court Department on May 9, 1991.

The case was heard by *George C. Keady, Jr.*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Erin Kemple* for the plaintiff.

*Daniel W. Halston*, Assistant Attorney General, for the defendant.

*Allan G. Rodgers*, for Coalition for Basic Human Needs & others, amici curiae, submitted a brief.

ABRAMS, J. The plaintiff, Kathy Johnson, appeals from the allowance of a motion of the Department of Public Welfare (department) for summary judgment terminating her Aid to Families with Dependent Children (AFDC) benefits and from the denial of her motion for summary judgment. The department terminated Johnson's benefits because Johnson's daughter Anitra was placed in the temporary custody of the Department of Social Services (DSS). That termination was upheld by the hearing officer in the administrative appeal

process. Johnson sought review in the Superior Court under G. L. c. 30A, § 14 (1990 ed.). Johnson appeals from the judge's rulings on the cross-motions for summary judgment. We allowed Johnson's application for direct appellate review. We conclude that the judgment for the department is to be reversed and judgment is to be entered for Johnson without further hearing except as to the amount due for the lost benefits.

The Federal government, through the AFDC program, wants to encourage "the care of dependent children in their own homes by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." 42 U.S.C. § 601 (1988). We have recognized that the "purpose of the AFDC program is to enable children, one or both of whose parents are absent or unable to provide support, to continue living at home through the provision of funds for their shelter, food, and other necessary items." *Civetti* v. *Commissioner of Pub. Welfare*, 392 Mass. 474, 477 (1984). One of the requirements for the receipt of AFDC is that the child "must be living with his or her relative . . . in a place of residence maintained by such relative as a home." 106 Code Mass. Regs. § 303.230 (A) (1986).

If the child is temporarily in the care or custody of an agency, the "living with" requirement will be met if the relative continues to exercise responsibility for the care and control of the child. 106 Code Mass. Regs. § 303.230 (A) (2) (b) (1986). To verify that the relative does exercise such responsibility, the regulations mandate that the relative submit a copy of the voluntary agreement or court order, the service plan of the agency that details the relative's responsibility for the care and control of the child and a statement from a worker "describing the actual care and control of the child

being exercised" by the relative. 106 Code Mass. Regs. § 303.230 (B) (2) (1986). The regulation requires that the relative show he or she has substantial involvement in the child's life.

We summarize the relevant facts. Johnson is the mother of Anitra Johnson. Anitra is diabetic and must take insulin. She also has emotional problems. When Johnson found she could not control Anitra, she sought the help of the Springfield Juvenile Court. On December 14, 1989, the court found Anitra to be a child in need of services (CHINS) and gave temporary legal and physical custody to DSS, with placement out of the home.[1]

DSS, Johnson, and Anitra entered into a service plan on December 10, 1989. Johnson, who had been alcohol and drug-involved, contracted to attend Narcotics Anonymous, submit to random urine tests, to "[p]articipate in Anitra's counseling as deemed appropriate by the therapist, to help re-establish parent-child relationship and communication," to participate in family counseling and to maintain at least weekly contact with Anitra while Anitra was in placement. The foster parent was to supervise the diabetes management, take Anitra to her medical appointments, and meet with DSS and with Johnson monthly. Anitra's target return date was March, 1990.

Because of her emotional and physical problems, DSS placed Anitra in four different situations.[2] In December, 1990, Johnson, DSS, and Anitra entered another service plan. Again, Johnson was to attend meetings in order to remain drug-free, to participate in Anitra's counseling as deemed appropriate by the therapist, to attend counseling

---

[1] A copy of the order was not included in the record.

[2] In the record before us, a letter written January 4, 1991, from DSS to the plaintiff's attorney listed Anitra's placements:

"12/14/89-1/17/89: DSS approved foster home where foster parent also diabetic.

01/19/90-03/02/90: Temporary residential placement with twenty-four hour staff.

03/02-90-6/22/90: Adolescent Assessment Center.

06/22/90-present: Shepard Hill Residence."

sessions, to meet with the DSS worker at least once a month, and to maintain weekly contact with Anitra. Johnson submitted these service plans to the hearing officer at the administrative hearing.

Prior to Anitra's removal from her home, Johnson had been receiving AFDC benefits. In October, 1990, the department attempted to terminate these benefits because "there is no eligible child living with you and you do not meet the special rules to get benefits when your child is temporarily absent from your home."[3] Johnson appealed her case and a hearing officer conducted a hearing.

At the administrative hearing, Johnson presented testimony and documentary evidence. Johnson stated that DSS had temporary custody. She asserted that she did all the things her first service plan required and that she was a member of Anitra's counseling and treatment team. She said that when Anitra went to Shepard Hill, a second service plan was signed, with the same goal as the previous one, to strengthen the family unit.

Johnson participated in Anitra's counseling and was a member of her counseling team. Johnson worked with DSS to devise treatment and education goals. Johnson met with Anitra's teachers and with the principal of Anitra's school every month to monitor Anitra's educational progress and continued to meet one-on-one with the teachers and the principal.

Johnson explained that she provided some clothes and personal items for Anitra, although she did understand that Shepard Hill also would buy some clothes and supply some toiletries. Johnson also said that Anitra came home once a week. On these weekly visits, Johnson would travel by bus to

---

[3]The department already had actually terminated Johnson's benefits under AFDC and had certified her for Family Reunification Benefits (FRB). FRBs were available to families who were ineligible for AFDC because the child was temporarily out of the home and in the custody of DSS. See 106 Code Mass. Regs. § 305.450 (1990). The notice states, however, that the department would be terminating Johnson's AFDC benefits.

meet Anitra in another town and they would travel back home together by bus. Anitra would spend the afternoon, with Johnson responsible for making sure she took her insulin and ate; and then someone from Shepard Hill would pick her up. Johnson stated that Shepard Hill did not think that Anitra was ready for overnight visits, although she occasionally spent the night with her. Johnson stated that she met with the therapists and teachers at Shepard Hill to discuss Anitra's medical needs. Johnson stated that she maintained a two-bedroom apartment so Anitra would have a room when she came home.

Johnson also submitted a letter from the DSS worker stating that DSS had temporary legal and physical custody of Anitra and noting that the goal of the Johnson service plan was reunification. The letter explained that DSS "did not seek custody nor was it granted to DSS as a result of an unwillingness or inability of Kathy Johnson to parent her daughter. Anitra's behavior had become so unmanageable at home, in school and in the community that the court felt this measure was necessary in order to stabilize her." The worker explained that "Johnson has been actively involved in Anitra's life and her care all along. She communicates with this office and with the residence on a regular basis regarding her daughter. She attends all meetings that pertain to Anitra and visits with her at least once a week. This has been difficult at times depending on Anitra's location but it is important to note that while Anitra was placed in Springfield for a period, her mother visited her four to five times a week." The worker continued, "It is the opinion of [DSS] that it is essential that . . . Johnson be able to maintain a home for Anitra to return to."

The hearing officer allowed the department two weeks within which to present its case.[4] The department did not submit any evidence.

---

[4]The representative of the department present at the hearing was not the person responsible for this case.

The hearing officer, after examining the service plans and the letter from DSS and hearing Johnson's testimony, noted that "DSS has not given the appellant any financial responsibility for [Anitra] for purchase of clothing or personal needs." She found that "[r]esponsibility for the child's care and control has been delegated by the DSS, the legal custodian, to the residential placement center. . . . The fact that the DSS has arranged for [Johnson] to attend meetings at [Anitra's] treatment center and participate in counseling with [Anitra] does not mean that [Johnson] exercises responsibility for the care and control of [Anitra]. It is merely evidence that the DSS is working to reunite the family by persuading [Anitra] to accept [Johnson's] care and control, and by teaching [Johnson] how to exercise responsibility for care and control." She concluded that the Johnson case was not one in which "a parent retains responsibility for the day-to-day care of a child attending school as the regulation contemplates." The hearing officer concluded that Johnson did not exercise responsibility for the care and control of Anitra. Therefore, she determined that Johnson was not eligible for AFDC benefits.[5]

Johnson sought review in the Superior Court. Both parties moved for summary judgment. The judge said that "the issue becomes whether [Johnson] exhibits the requisite day-to-day care and control of Anitra." He noted that "[t]he responsibility and decision making process regarding Anitra's life . . . does not rest with [Johnson]. The finding of the [hearing officer] is supported by substantial evidence."

Johnson argues that the department's termination of her benefits violated its own regulations because the department required that Johnson demonstrate that she has responsibility for the day-to-day care of Anitra. Johnson asserts that the application of the day-to-day standard was error. We agree.

In 106 Code Mass. Regs. § 303.230 (A) (1), when the child is physically present in the home, a relative must be

---

[5]The hearing officer also determined that Johnson would not be eligible for a continuation of FRBs.

responsible for the day-to-day care of the child in order to meet the "living with" requirement and thus be eligible for AFDC. This language is missing from the section regarding children in the custody of DSS. That regulation only requires that the relative exercise responsibility for the care and control of the child. Rules of statutory interpretation, relevant to interpreting regulations, suggest that "where the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present." *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982).

When a child is in the temporary[6] custody of DSS, the regulations require a relative to exercise responsibility for care and control of the child. 106 Code Mass. Regs. § 303.230 (A) (2) (b). The regulations do not contemplate consideration of a relative's responsibility for day-to-day care when DSS has temporary custody. Therefore, the hearing officer and the judge erred in requiring Johnson to show that she exercised responsibility for Anitra's day-to-day care.

The regulation concerning eligibility for AFDC requires that the department look at the DSS service plan and determine what the relative can do to exercise care and control. The department has determined it will implement the policy of strengthening families by continuing AFDC benefits to a relative with a child temporarily absent when the parent exercises responsibility for the care and control of the child. To verify that the relative does exercise responsibility for the care and control of the child, the regulations mandate that the relative submit a copy of the voluntary agreement or

---

[6]The department argues that Anitra's custody was permanent, not temporary. Nothing in the record supports the department's conclusion that her placement outside the home was permanent. The service plans included target return dates. Those dates were changed because of Anitra's emotional and behavioral problems. Reunification of the family was the stated goal in both service plans.

"Permanent" is defined as "[c]ontinuing or enduring in the same state, status, place, or the like, without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient." Black's Law Dictionary 1139 (6th ed. 1990).

court order, the service plan of the agency that details the relative's responsibility for the care and control of the child and a statement from a worker "describing the actual care and control of the child being exercised" by the relative. 106 Code Mass. Regs. § 303.230 (B) (2) (1986). In addition, the department provides its workers with a manual that lists various factors a worker should examine in making a determination about the continuation of benefits. AFDC workers are instructed to look at whether the relative "participates in decisions about (1) the child's schooling, (2) the child's vacations, and (3) the educational, treatment, service, or health care planning for the child; provides clothing, transportation, school supplies, entertainment or other expenses; maintains a residence or must obtain a separate residence (for example, away from an abusive spouse or other individual) when the return of the child is conditioned on these factors; maintains a bedroom for the child's visits or return home; spends weekends or vacations with the child; cares for the child during illnesses; maintains close contact with the child; and has the ability to terminate the commitment arrangement with the public or private agency." Massachusetts AFDC Worker Handbook, at 4030-1-2.

Johnson submitted to the hearing officer the evidence required by the regulations and suggested by the AFDC Worker Handbook. From the record before us, Johnson may have exercised all responsibility for care and control of Anitra that she could have under the DSS service plan. Johnson recognized that Anitra needed help and requested it from the Juvenile Court through the CHINS petition. The DSS worker stated that Anitra was difficult to manage and that, as a result, DSS had to move her to a series of placements. When Anitra resided in placements close to Johnson, Johnson generally visited her five times a week. Johnson continued to spend as much time as possible with Anitra when DSS moved her to Shepard Hill, given the distance between Johnson's home and the residence. Johnson did everything possible to regain custody of Anitra, including remaining drug- and alcohol-free for a substantial time. Johnson paid

for the two-bedroom apartment on a reduced income, paid transportation costs, bought what personal items and clothes she could, and supervised Anitra on her visits.

Johnson submitted documentation indicating that she was a member of Anitra's treatment and counseling team. She did not miss any meetings. Johnson also worked with Anitra's therapists, counselors, and teachers at Shepard Hill. Johnson met Anitra's teachers and principal once a month to make sure Anitra was meeting her educational goals. Johnson remained familiar with every aspect of Anitra's life. The DSS worker wrote that Johnson was actively involved in Anitra's life, communicated regularly with DSS, and attended all meetings that pertained to Anitra. In *Civetti* v. *Commissioner of Pub. Welfare*, 392 Mass. 474, 491 (1984), we concluded that "it would be wholly antithetical to the objectives of the AFDC program to deprive the plaintiff of benefits intended in large part to keep families together by making the costs of sheltering children affordable." We said that the plaintiff was entitled to continued AFDC benefits when "the children visited the plaintiff [Furtado] on vacations and holidays but were not permitted to stay in the plaintiff's home overnight . . . . Although the DPW [the predecessor of DSS] assumed school expenses, the plaintiff paid, in connection with the children's visits, expenses relating to food, clothing, entertainment, school books and transportation." *Id.* at 482.

Johnson asserts that the hearing officer erred in determining she did not exercise responsibility for the care and control of Anitra. The goal of the AFDC program is "to enable children, one or both of whose parents are absent or unable to provide support, to continue living at home through the provision of funds for their shelter, food, and other necessary items." *Civetti* v. *Commissioner of Pub. Welfare, supra* at 477. There was substantial evidence to conclude that Johnson exercised the maximum responsibility for the care and control of Anitra the DSS service plans permitted. The evidence showed that Johnson had a substantial degree of involvement in Anitra's life sufficient to satisfy the regulation.

An administrative agency's determination may be set aside if the evidence "points to an overwhelming probability of the contrary." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981). In addition, " 'evidence of a party having the burden of proof may not be disbelieved without an explicit and objectively adequate reason.' L.L. Jaffe, [Judicial Control of Administrative Action] 607 [1965]. 'If the proponent has presented the best available evidence, which is logically adequate, and is neither contradicted nor improbable, it must be credited . . . .' *Id.* at 608." *New Boston Garden Corp.* v. *Assessors of Boston, supra* at 470-471.

The summary judgment for the department is reversed. Judgment is to be entered for Johnson on her motion for summary judgment and the case is remanded to the Superior Court for a determination as to the amounts due for the loss of benefits.[7]

*So ordered.*

---

[7]The question of attorneys' fees and the amount of the award, if any, is referred to a single justice.